No. 23-2069

# United States Court of Appeals
# for the First Circuit

---

JENNIFER COTTO, on behalf of herself and all others similarly situated; JAMIE KIMBALL, on behalf of herself and all others similarly situated; DAVID CUMMINGS, on behalf of himself and all others similarly situated; TODD MOTON, on behalf of himself and all others similarly situated; TRAVIS MORAN, on behalf of himself and all others similarly situated,

*Plaintiffs-Appellees*,

STACY FOSTER, on behalf of herself and all others similarly situated; JONATHAN RILEY, on behalf of himself and all others similarly situated; NICOLE WESTCOTT, on behalf of herself and all others similarly situated,

*Plaintiffs*,

*v.*

ANDREA J. CAMPBELL, Attorney General; TIMOTHY SHUGRUE, Berkshire County District Attorney; THOMAS M. QUINN, III, Bristol County District Attorney; ROBERT J. GALIBOIS, II, Cape and Islands District Attorney; PAUL TUCKER, Essex County District Attorney; ANTHONY GULLUNI, Hampden County District Attorney; MARIAN RYAN, Middlesex County District Attorney; MICHAEL W. MORRISSEY, Norfolk County District Attorney; DAVID E. SULLIVAN, Northwestern District Attorney; TIMOTHY J. CRUZ, Plymouth County District Attorney; KEVIN R. HAYDEN, Suffolk County District Attorney; JOSEPH D. EARLY, JR, Worcester County District Attorney; THOMAS G. AMBROSINO, Administrator of the Trial Court; JOHN MAWN, JR., Massachusetts State Police Interim Superintendent,

*Defendants-Appellants*,

COMMONWEALTH OF MASSACHUSETTS; BROCKTON POLICE DEPARTMENT, on behalf of themselves and all other police departments similarly situated; FALL RIVER POLICE DEPARTMENT, on behalf and all other police departments similarly situated; BOSTON POLICE DEPARTMENT, on behalf of themselves and all other police departments similarly situated;

SPRINGFIELD POLICE DEPARTMENT, on behalf of themselves and all other police departments similarly situated; CHARLIE BAKER, Governor; DEBORAH B. GOLDBERG, Treasurer; EDWARD DOLAN, Commissioner of Probation; DANIEL BENNETT, Secretary of the Executive Office of Public Safety and Security,
*Defendants.*

_____

ON INTERLOCUTORY APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

_____

## BRIEF OF STATE DEFENDANTS-APPELLANTS

_____

ANDREA JOY CAMPBELL
*Attorney General of Massachusetts*
Anne Sterman, 1st Cir. No. 124090
Katherine B. Dirks, 1st Cir. No. 1140660
Christine Fimognari, 1st Cir. No. 1198115
*Assistant Attorneys General*
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2206
christine.fimognari@mass.gov

Date: June 7, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ....................................................1

QUESTION PRESENTED ...................................................................1

STATEMENT OF THE CASE ..............................................................2

    I.     The State Act. ...................................................................... 2

    II.    *Commonwealth v. Martinez.* ............................................... 3

    III.   The Allegations in the Operative Complaint. ..................... 5

    IV.   The Decision Below.......................................................... 7

SUMMARY OF THE ARGUMENT ..................................................10

ARGUMENT......................................................................................12

    I.     Plaintiffs' Claims Are Barred by Sovereign Immunity, and the *Ex Parte Young* Exception Does Not Apply to Any Aspect of Plaintiffs' Requested Relief................................................................12

         A.    As the District Court correctly held, Plaintiffs cannot show a continuing violation of federal law with respect to forfeited property. ..................................................13

         B.    Because there is no continuing violation of federal law to enjoin in this case, the ancillary forms of relief discussed by the District Court are not available .....................................................15

              1.    The Eleventh Amendment bars a federal court from ordering the Commonwealth Defendants to notify Plaintiffs of their right to pursue the return of forfeited property in state court................................16

              2.    The Eleventh Amendment bars a fedreal court from requiring the Commonwealth Defendants to provide an accounting of forfeited property .................19

3.      The Eleventh Amendment bars a fedreal court
        from requiring additional or more robust procedure
        in a state court proceeding concerning the return of
        forfeited property .........................................................21

II.     Plaintiffs' Claim for Declaratory Judgment Cannot Act as an
        End Run Around the Eleventh Amendment's Bar to the
        Requested Relief. ..............................................................25

CONCLUSION ................................................................26

CERTIFICATE OF COMPLIANCE WITH RULE 32 ........................................28

CERTIFICATE OF SERVICE...............................................29

ADDENDUM ....................................................................1

# TABLE OF AUTHORITIES

## Cases

*Bridgeman v. Dist. Attorney for Suffolk Dist.*,
476 Mass. 298, 67 N.E.3d 673 (2017) ............................................................4

*Comm. for Pub. Counsel Servs. v. Attorney Gen. of Mass.*,
480 Mass. 700, 108 N.Ed.3d 966 (2018)........................................................4

*Commonwealth v. Brown*,
426 Mass. 475, 688 N.E.2d 1356 (1998).........................................................3

*Commonwealth v. Martinez*,
480 Mass. 777, 109 N.E.3d 459 (2018)....................................................3-5, 17

*De Leon Lopez v. Corporacion Insular de Seguros*,
931 F.2d 116 (1st Cir. 1991) .........................................................................24

*Doe v. Shibinette*,
16 F.4th 894 (1st Cir. 2021) .....................................................................12, 13

*Dugan v. Rank*,
372 U.S. 609 (1963)......................................................................................23

*Edelman v. Jordan*,
415 U.S. 651 (1974)..........................................................................13, 18, 23

*Ex parte Ayers*,
123 U.S. 443 (1887)......................................................................................23

*Ex parte Young*,
209 U.S. 123 (1908)....................................................... 10-15, 18, 20, 22, 24, 25

*Ford Motor Co v. Dep't of Treasury*,
323 U.S. 459 (1945).................................................................................23, 25

iii

*Green v. Mansour*,
474 U.S. 64 (1985)...................................................................13-18, 20, 21, 26

*Idaho v. Coeur d'Alene Tribe of Idaho*,
521 U.S. 261 (1997)...................................................................14, 23

*Ladd v. Marchbanks*,
971 F.3d 574 (6th Cir. 2020)...................................................24

*Mills v. Maine*,
118 F.3d 37 (1st Cir. 1997)...................................................26

*MSA Realty Corp. v. Illinois*,
990 F.2d 288 (7th Cir. 1993)...................................................26

*Nelson v. Colorado*,
581 U.S. 128 (2017)...................................................................3-6

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984)...................................................................22, 23, 24

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
506 U.S. 139 (1993)...................................................................1, 12, 13

*Quern v. Jordan*,
440 U.S. 332 (1979)...................................................................17-21

*Rosie D. ex rel. John D. v. Swift*,
310 F.3d 230 (1st Cir. 2002)...................................................12, 13

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.*,
535 U.S. 635 (2002)...................................................................15-16

*Virginia Office for Protection & Advocacy v. Stewart*,
563 U.S. 247 (2011)...................................................................15, 22, 23, 24

*Whalen v. Mass. Trial Court*,
397 F.3d 19 (1st Cir. 2005)...................................................13

iv

*Will v. Michigan Dep't of State Police*,
    491 U.S. 58 (1989)........................................................................12

*Ysleta Del Sur Pueblo v. Laney*,
    199 F.3d 281 (5th Cir. 2000)..........................................................24

## **Statutes**

28 U.S.C. § 1291...................................................................................1

28 U.S.C. § 2201...................................................................................7

42 U.S.C. § 1983...................................................................................6

Mass. Gen. L. ch. 94C, § 47............................................................2, 3, 5

## **Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................7

Fed. R. Civ. P. 12(b)(6) ........................................................................7

Mass. R. Civ. P. 60 ..........................................................5, 9, 10 16, 17, 21, 26

## JURISDICTIONAL STATEMENT

This is an interlocutory appeal from an order of the District Court (Talwani, J.), entered on November 13, 2023, denying in part the Commonwealth Defendants' motion to dismiss based on Eleventh Amendment sovereign immunity.[1] The Commonwealth Defendants filed a timely notice of appeal on December 12, 2023. This Court has jurisdiction over this interlocutory appeal under the collateral order doctrine, which allows states to bring an interlocutory appeal of a district court order denying a claim of Eleventh Amendment sovereign immunity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144-47 (1993). This Court therefore has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291.

## QUESTION PRESENTED

Whether Eleventh Amendment sovereign immunity bars the entry of an order requiring "notice relief" or an accounting of forfeited property, where the

---

[1] The "Commonwealth Defendants," under Fed. R. App. P. 43(c)(2), are Andrea Joy Campbell, Massachusetts Attorney General; Timothy Shugrue, Berkshire County District Attorney; Thomas M. Quinn, III, Bristol County District Attorney; Robert Galibois, Cape and Islands District Attorney; Paul Tucker, Essex County District Attorney; Anthony Gulluni, Hampden County District Attorney; Marian Ryan, Middlesex County District Attorney; Michael W. Morrissey, Norfolk County District Attorney; David E. Sullivan, Northwestern District Attorney; Timothy J. Cruz, Plymouth County District Attorney; Kevin R. Hayden, Suffolk County District Attorney; Joseph D. Early, Jr., Worcester County District Attorney; Thomas G. Ambrosino, Administrator of the Trial Court; and Lt. Col. John Mawn, Jr., Massachusetts State Police Interim Superintendent; all in their official capacities. R.A. 73-80. The Administrator of the Trial Court is an executive of the Trial Court, not an appointed judge. R.A. 78.

Commonwealth is the real, substantial party in interest, where Plaintiffs allege no ongoing violation of federal law calling for prospective relief, where any notice relief would not be ancillary to injunctive relief, and where the notice relief would be tantamount to a declaratory judgment regarding state court proceedings?

<u>**STATEMENT OF THE CASE**</u>

This case arises from and follows decisions issued by the Massachusetts Supreme Judicial Court ("SJC") between 2017 and 2019 vacating thousands of convictions obtained under the Massachusetts Controlled Substances Act, Mass. Gen. L. ch. 94C, § 47 ("State Act"), as global relief to individuals who may have been impacted by the egregious misconduct of drug lab chemists Annie Dookhan and Sonja Farak.

## I.    The State Act.

The State Act authorizes the forfeiture of money, property and other things of value when used in exchange for a controlled substance, in violation of a wide range of drug offenses.  Mass. Gen. L. ch. 94C, § 47(a)(3), (5).  Property is not forfeitable unless it was "used or intended to be used" to commit or facilitate one of the enumerated drug-related crimes.  Mass. Gen. L. ch. 94C, § 47(a)(3), (5), (7).

A forfeiture proceeding can be brought either through a civil *in rem* action filed in Superior Court (Mass. Gen. L. ch. 94C, § 47(d)), or by motion in a related criminal case in the Massachusetts District Court or Superior Court (Mass. Gen. L.

ch. 94C, § 47(b)). Regardless of how the proceedings are initiated, the burden of proof is the same: "the [C]ommonwealth shall have the burden of proving to the court the existence of probable cause to institute the [forfeiture] action, and [the] claimant shall then have the burden of proving that the property is not forfeitable." *Commonwealth v. Martinez*, 480 Mass. 777, 790-91, 109 N.E.3d 459, 475 (2018) (quoting *Commonwealth v. Brown*, 426 Mass. 475, 477, 688 N.E.2d 1356, 1358-59 (1998) and citing Mass. Gen. L. ch. 94C, § 47(d)). Forfeiture under the State Act is therefore considered "outside the scope of the criminal matter and constitutes a civil proceeding." *Brown*, 426 Mass. at 480, 688 N.E.2d at 1360.

Forfeited assets and proceeds from their sale are divided between the prosecuting offices (those of the District Attorneys or Attorney General) of the underlying criminal action and the participating police departments. Mass. Gen. L. ch. 94C, § 47(d).

## II.    *Commonwealth v. Martinez.*

In 2018, the SJC issued its decision in *Martinez*, which interpreted the State Act and assessed whether the Commonwealth had obligations to return property that had been forfeited under the State Act in connection with drug offenses, where the underlying convictions had been vacated due to the egregious misconduct of Dookhan and Farak. The *Martinez* decision turned on the U.S. Supreme Court's 2017 decision in *Nelson v. Colorado*, 581 U.S. 128 (2017), regarding procedural due

process obligations to return certain fees to a criminal defendant after a conviction is vacated; and the SJC's own decisions between 2017 and 2019 issuing global relief to Dookhan and Farak defendants.

In 2017, the U.S. Supreme Court had ruled in *Nelson* that when a criminal conviction has been invalidated by a reviewing court and no retrial will occur, states have a federal constitutional duty to "refund fees, court costs, and restitution exacted from the defendant upon, and as a consequence of, the conviction." 581 U.S. at 130.

Around that same time, the SJC issued a series of rulings resulting in the vacating of drug convictions for tens of thousands of defendants whose convictions may have been affected by the drug lab scandals arising from the egregious misconduct of Dookhan and Farak. *See, e.g.*, *Comm. for Public Counsel Servs. v. Attorney Gen. of Mass.*, 480 Mass. 700, 108 N.Ed.3d 966 (2018); *Bridgeman v. Dist. Attorney for Suffolk Dist.*, 476 Mass. 298, 67 N.E.3d 673 (2017); Declaratory Judgment, *Bridgeman v. Dist. Attorney for Suffolk Cnty.*, SJ-2014-0005 (Mass. Sup. Jud. Ct. for Suff. Cnty. Apr. 19, 2017) (attached hereto at Add. 25-26). The duty then fell on the Commonwealth to develop a system for refunding exactions paid by those defendants in a manner consistent with due process.

In *Martinez*, the SJC considered *Nelson* and its import for, *inter alia*, the return of forfeited property in light of the global relief provided to Dookhan and Farak defendants. Reviewing a claim brought by an individual whose conviction had been

4

vacated due to Dookhan's misconduct, and whose property had been forfeited by motion under Mass. Gen. L. ch. 94C, § 47(b), the SJC found that the individual was *not* entitled to the automatic return of her forfeited assets simply by virtue of the dismissal of her criminal case. *Martinez*, 480 Mass. at 792, 109 N.E.3d at 476. The SJC held that "[t]he finding of probable cause of nexus that sufficed to order forfeiture in the civil proceeding did not depend on the finding in the criminal proceeding of sufficient evidence to warrant a finding of guilt on the plea," and that civil forfeiture judgments are "not solely a consequence of the invalidated drug convictions, and need not be vacated because of their invalidation." *Id.* at 791. The SJC further held that the issue of whether "the reasons for invalidating a conviction potentially may warrant relief from civil judgment of forfeiture" "must be separately litigated in the civil forfeiture proceeding through a motion for relief from judgment under Mass. R. Civ. P. 60(b)." *Id.* at 791-92.[2]

### III. The Allegations in the Operative Complaint.

The original complaint in this action was filed in 2018, alleging that criminal defendants whose convictions had been vacated due to the Dookhan and Farak drug lab scandals were entitled to the return of various categories of fees, exactions, and

---

[2] Some Dookhan and Farak defendants have successfully sought the return of forfeited property pursuant to the procedure outlined in *Martinez*. *See, e.g.*, *Commonwealth v. Chhot*, No. 0673CR00937, slip op. at 4-6 (Mass. Super. Ct. Aug. 7, 2020) (ordering return of $3,118 in forfeited funds pursuant to a motion brought under Mass. R. Civ. P. 60(b)) (attached hereto at Add. 32-37).

forfeited property, as a matter of procedural due process under *Nelson*, 581 U.S. 128. R.A. 22-63.[3]  The majority of the claims from the original complaint have been resolved through a comprehensive class action settlement in Massachusetts state court.  *See* Final Approval Order, *Foster v. Commonwealth of Massachusetts*, No. 1984CV03373-C (Mass. Super. Ct., Oct. 6, 2022) (attached hereto at Add. 27-31). Under the state court's Final Approval Order, the settlement provided a comprehensive administrative scheme by which refund checks were issued to more than 30,000 class members, without the class members having to take any affirmative action in order to receive their refunds.  *Id.*

Plaintiffs filed the operative Second Amended Complaint ("Complaint") in this case on February 3, 2023.  R.A. 64-107.  The Complaint seeks relief on behalf of a putative class of Dookhan and Farak defendants whose convictions were vacated and who had property forfeited to the Commonwealth in state court proceedings in connection with their drug convictions.  R.A. 97.  Plaintiffs maintain that they are entitled to the return of forfeited money and property under 42 U.S.C. § 1983, as a matter of procedural due process under the Fourteenth Amendment and *Nelson*, 581 U.S. 128, by virtue of the fact that their drug convictions have been vacated.  *See* R.A. 66-68 (Counts II and III).  Plaintiffs also claim entitlement to relief under

---

[3] Citations to the Record Appendix are in the form "R.A. ___," and citations to the Commonwealth Defendants' Addendum filed herewith are in the form "Add. ___."

§ 1983 based on the Eighth Amendment prohibition on excessive fines, and assert that Defendants have been unjustly enriched under state common law (Counts IV and V). R.A. 104-05. Plaintiffs also seek declaratory judgment under 28 U.S.C. § 2201, requesting declaratory relief as to the rights and obligations of the parties (Count I). R.A. 101.

The Complaint requests the following relief on behalf of the putative class: (1) a "declar[ation] that Plaintiffs . . . are entitled to the return of all Forfeited Property," (2) an order that the defendants shall "notify Class Members of their rights to the return of all Forfeited Property," (3) an order that the defendants "implement an efficient, effective and fair process to return all Forfeited Property," (4) an order that the defendants "conduct a full accounting of all Forfeited Property," (5) the return of forfeited property, and (6) a prohibition against the defendants seeking to re-forfeit the same property under the State Act. R.A. 106-07.

## IV. The Decision Below.

The Commonwealth Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). R.A. 108-13. They argued that Plaintiffs' claims were barred by the Eleventh Amendment as well as federal abstention and related doctrines, and that the claims could also be dismissed for failure to state a claim and because they were time-barred. R.A. 117-35. The other defendants—the

municipal police departments for Boston, Brockton, Fall River and Springfield—also filed motions to dismiss.  R.A. 11.

The District Court (Talwani, J.) issued a Memorandum and Order on November 13, 2023, which granted the municipal defendants' motions to dismiss, and granted in part and denied in part the Commonwealth Defendants' motion to dismiss.  Add. 1-24.  The District Court held that the *Younger* abstention, *Colorado River* abstention, and *Rooker-Feldman* doctrines did not apply.  Add. 19-22.  The District Court found that Plaintiffs' claims related to alleged errors in the initial forfeiture proceedings were time-barred, but the claims of alleged unlawful withholding of forfeited property as of 2017 were not time-barred.  Add. 18-19.  The District Court held that Plaintiffs' claims against the Commonwealth Defendants for the return of forfeited assets were barred by the Eleventh Amendment.  However, the District Court concluded that the "prospective, procedural injunctive relief" sought by Plaintiffs from the Commonwealth Defendants was not barred.  Add. 13-18.

Specifically, the District Court found that it had authority, notwithstanding Eleventh Amendment protections, to consider three categories of relief from the Commonwealth Defendants:

(1) An accounting of forfeited property:  The court decided that it could order a "full accounting of all Forfeited Property obtained from Class Members in

connection with their criminal cases." Add. 17. The decision does not provide further description of the contemplated accounting. *See id*.

(2) <u>Notification of rights under the State Act or Massachusetts Rule of Civil Procedure 60(b)</u>: The court decided that it could grant relief to Plaintiffs in the form of "notification of their rights to a more robust procedure under the State Act, or their rights to pursue relief under Rule 60(b)." Add. 17. This request for relief is not found in the Complaint, R.A. 106-07, and the District Court did not identify what portion of the Complaint served as the District Court's basis for identifying this category of potential relief. Add. 17 (addressing the third form of relief "to the extent Plaintiffs' request can be read generally to include" it). Also, the District Court did not define what it meant by "more robust procedure under the State Act," a particularly unclear phrase given that it found Plaintiffs' claims regarding the operation of the State Act in the original forfeiture proceedings to be time-barred. Add. 17-18.

(3) <u>Unspecified due process protections in Rule 60(b) hearings</u>: The court below concluded that it could order "additional procedural due process protections within a Rule 60(b) hearing." Add. 17-18. This request for relief is not found in the Complaint. R.A. 106-07. Although the Complaint broadly seeks to "prohibit Defendants from seeking to re-forfeit the same property pursuant to the state forfeiture statute, absent enhanced due process protections," it makes that request

9

solely in connection with an attempt by the Commonwealth to file new motions or actions seeking forfeiture of the property. R.A. 106-07. The District Court did not define the "additional procedural due process protections" in a Rule 60(b) hearing that it contemplated, or whether and how such undefined protections could be ordered by the District Court or provided by the Commonwealth Defendants. Add. 18.

The Commonwealth Defendants timely filed a Notice of Appeal from the Memorandum and Order on the Motion to Dismiss. R.A. 16-19. Plaintiffs filed a Notice of Cross Appeal. R.A. 20-21.

## SUMMARY OF THE ARGUMENT

Plaintiffs' claims against the Commonwealth Defendants are barred in their entirety by sovereign immunity, and that part of the decision below that denied the Commonwealth Defendants' motion to dismiss should be reversed.

The exception to sovereign immunity provided by *Ex parte Young*, 209 U.S. 123 (1908), does not apply where, as here, Plaintiffs have failed to allege an ongoing violation of federal law calling for prospective relief. Plaintiffs seek relief for a past alleged wrong, namely, the forfeiture of their property at the time of the original forfeiture order—or at the latest, when the convictions were vacated between 2017 and 2019 and the property was not returned. As the District Court correctly concluded, any return of this property, and any action facilitating such return,

constitutes a remedy directed at a past alleged violation of federal law and therefore does not fall within the *Ex parte Young* exception.

Each of the forms of relief contemplated by the District Court is barred for this reason. Notice relief is unavailable under *Ex parte Young* in this case because it is not ancillary to valid injunctive relief. Similarly, an accounting of forfeited property would be available only as ancillary relief to a valid injunction relating to forfeited property, and no such injunction exists in this case. An accounting would also be administratively burdensome, and is unavailable for that reason as well. Finally, and similarly, an order requiring additional or more robust state court proceedings similarly could not be issued absent a valid injunction, and in any event would operate against the Commonwealth itself rather than the individual Commonwealth Defendants, and is therefore barred for that reason as well.

Any award of declaratory relief regarding the state court proceedings for the forfeiture orders would be likewise improper. Declaratory relief regarding rights to forfeited property would be used as res judicata in state court proceedings to recover such property. Such relief is therefore an end run around sovereign immunity, and is barred by the Eleventh Amendment.

## ARGUMENT

**I.  Plaintiffs' Claims Are Barred by Sovereign Immunity, and the *Ex Parte Young* Exception Does Not Apply to Any Aspect of Plaintiffs' Requested Relief.**

All of Plaintiffs' requests for relief are barred by sovereign immunity.  A district court's denial of a motion to dismiss based on Eleventh Amendment sovereign immunity is reviewed *de novo*.  *Doe v. Shibinette*, 16 F.4th 894, 903 (1st Cir. 2021).  Because the claims are barred in their entirety, that portion of the decision below that denied in part the Commonwealth Defendants' motion to dismiss should be reversed.

The doctrine of sovereign immunity—confirmed by, but not limited to, the terms of the Eleventh Amendment—bars suits in federal court against unconsenting states.  *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002).  It also bars an official-capacity suit against state officials, which "is no different from a suit against the State itself."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment affords states an "immunity from suit," not merely a defense to litigation.  *Puerto Rico Aqueduct*, 506 U.S. at 144.

An exception to this rule, established in *Ex parte Young*, 209 U.S. 123 (1908), "allows federal courts . . . [to] enjoin state officials to conform future conduct to the requirements of federal law."  *Rosie D.*, 310 F.3d at 234.  But the *Ex parte Young* exception is "narrow."  *Puerto Rico Aqueduct*, 506 U.S. at 146.  The exception only

permits suits against state officials in their official capacities for "prospective injunctive relief" to prevent an ongoing violation of federal law. *Rosie D.*, 310 F.3d at 234; *Green v. Mansour*, 474 U.S. 64, 65 (1985); *Edelman v. Jordan*, 415 U.S. 651, 664-65 (1974). The rationale underlying the exception is that federal courts can "grant prospective injunctive relief to prevent a continuing violation of federal law, in part because a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Shibinette*, 16 F.4th at 903 (alterations accepted, internal quotation marks omitted). The *Ex parte Young* exception "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct*, 506 U.S. at 146. Nor does it extend to any other "claims for retrospective relief." *Green*, 474 U.S. at 68; *see also Whalen v. Mass. Trial Court*, 397 F.3d 19, 28-30 (1st Cir. 2005).

The District Court erred in concluding that some aspects of Plaintiffs' claims against the Commonwealth Defendants could overcome these bars to pursuing relief against the Commonwealth in federal court. As explained below, the Plaintiffs' claims must be dismissed in full.

A. **As the District Court correctly held, Plaintiffs cannot show a continuing violation of federal law with respect to forfeited property.**

The District Court rejected Plaintiffs' argument that a federal court could order the Commonwealth to return forfeited property, correctly concluding that

"Plaintiffs' argument that repayment would remedy a continuing wrong rather than a past one is unpersuasive." Add. 14. As the court recognized, Plaintiffs seek "the direct repayment of their forfeited assets," and any order requiring such repayment, "whether the remedy is styled as an order enjoining Defendants from violating the Constitution by withholding assets, or whether the remedy is styled as an order directing the Defendants to return those assets," would "to a virtual certainty be paid from state funds." Add. 15 (citation and internal quotation marks omitted). Consequently, as the District Court properly held, "[t]hat avenue of recourse is barred by the Eleventh Amendment." *Id.*

The District Court also correctly rejected the argument that the *Ex parte Young* exception would permit a federal court to order an individual Commonwealth Defendant to return forfeited property. Add. 16. The court quoted *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997), for the proposition that "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." Add. 12 (quoting *Idaho*, 521 U.S. at 277 (citation, alteration, and internal quotation marks omitted)). And, the court recognized, *Ex parte Young* "does not include an 'ultra vires' exception," and thus cannot be used to circumvent the Eleventh Amendment by allowing a federal court to order a state official to comply with federal law if such compliance

would result in the payment to the plaintiff of state funds. Add. 16. *Cf. Green*, 474 U.S. at 73 ("There is a dispute about the lawfulness of [the state official] respondent's past actions, but the Eleventh Amendment would prohibit the award of money damages or restitution if that dispute were resolved in favor of petitioners."). Thus, the District Court was correct to conclude that Plaintiffs' claims for return of forfeited property, however they are styled or pled, involve no ongoing violation of federal law and are therefore barred by the Eleventh Amendment.

### B. Because there is no continuing violation of federal law to enjoin in this case, the ancillary forms of relief discussed by the District Court are not available.

Despite correctly concluding that this case does not present an ongoing or continuing violation of federal law, the District Court determined that it could invoke the *Ex parte Young* exception to entertain claims for what it described as "[p]rospective, [p]rocedural [i]njunctive [r]elief." Add. 17. In so doing, the District Court ran afoul of the clear guidance set forth in *Green*, 474 U.S. 64, that such relief may not be awarded as "an independent form of relief," but instead must be "ancillary to a valid injunction previously granted," *id.* at 71.

It is well established that the application of the *Ex parte Young* exception to Eleventh Amendment immunity depends on two elements: whether the complaint "alleges an ongoing violation of federal law" and whether it "seeks relief properly characterized as prospective." *Virginia Office for Protection & Advocacy v. Stewart*,

563 U.S. 247, 255 (2011) (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Consequently, the District Court itself rejected the necessary predicate for any such relief when it correctly rejected Plaintiffs' claim of an ongoing violation of federal law. Add. 13-15; *supra* at 13-15. All of the remedies that the District Court allowed to survive the Eleventh Amendment bar—notice to Plaintiffs of their right to attempt to recover forfeited property under Mass. R. Civ. P. 60(b); an accounting of forfeited property; and unspecified "additional" or "more robust" state court procedures to recover forfeited property—would only facilitate the correction of a *past* alleged wrong.

In other words, because the District Court has already determined (correctly) that it cannot issue an injunction requiring the return of forfeited property, there is no "valid injunction previously granted" that can support ancillary relief relating to the return of such property. *Green*, 474 U.S. at 71. For that reason, the District Court's order should be reversed to the extent that it allows any aspect of Plaintiffs' claims to proceed.

> **1.     The Eleventh Amendment bars a federal court from ordering the Commonwealth Defendants to notify Plaintiffs of their right to pursue the return of forfeited property in state court.**

The District Court erred in concluding that, despite the absence of any continuing violation of federal law that it could enjoin, it "is permitted" to require the Commonwealth Defendants to "notif[y]" Plaintiffs of "their rights to pursue

relief under [Mass.] Rule [of Civil Procedure] 60(b)." Add. 17.[4] This remedy, untethered to any valid injunction, is beyond a federal court's authority.

*Green* states the rule with which the District Court's order does not comply: "[b]ecause 'notice relief' is not the type of remedy designed to prevent ongoing violations of federal law, the Eleventh Amendment limitation on the Art. III power of federal courts prevents them from ordering it as an independent form of relief." 474 U.S. at 71. The District Court, however, did not cite to *Green* in its discussion of notice relief, instead relying on *Quern v. Jordan*, 440 U.S. 332 (1979), as authority for its conclusion that it is "permitted" to grant such relief. *See* Add. 17 (describing a federal court's authority to require "notification of [Plaintiffs'] rights" as "the crux of the Supreme Court's holding" in *Quern*). But the circumstances that made notice relief permissible in *Quern* are absent here. In approving notice relief in that case, *Quern* stated that the notice at issue was "properly viewed as ancillary to the prospective relief *already ordered by the court*." *Quern*, 440 U.S. at 349 (emphasis added). Here, of course, the court has not "already ordered" any prospective or injunctive relief requiring the return of forfeited property, and has in fact (correctly) disclaimed authority to do so. *See supra* at 13-15. The court therefore lacks

---

[4] As noted *supra* at 3-5, the SJC held in *Martinez* that a motion pursuant to Mass. R. Civ. P. 60(b), filed in the same state court that heard the forfeiture proceeding, is the proper mechanism for seeking the return of forfeited property. *See* 480 Mass. at 791-92, 109 N.E.3d at 476.

authority to order notice relief relating to, or designed to facilitate, the return of forfeited property.

The Supreme Court removed any doubt regarding this critical limitation on the availability of "notice relief" in *Green*. There, the Court considered and squarely rejected the argument that "notice is an independent form of prospective relief protected against the Eleventh Amendment bar by *Ex parte Young*." 474 U.S. at 69. Instead, the Court explained that, in *Quern*, a district court had already "permanently enjoined the state officials from continuing to violate federal law" with respect to the payment of certain benefits. *Id.* Given the existence of that injunction, the validity of which was not in question, *Green* explained that "the specific order [for notice relief that was at issue in *Quern*] fell within the *Ex parte Young* exception to the Eleventh Amendment principle of sovereign immunity because it was ancillary to a valid injunction previously granted and was sufficiently narrow to retain its character as a mere case-management device." *Id.* at 71.[5]

*Green* then decided the matter before it in terms that are directly applicable to this case. In *Green*, as here (and unlike in *Quern*), "[b]ecause there is no continuing

---

[5] A "second injunction" issued by the same district court had required payment of past benefits that were withheld on account of the state officials' incorrect interpretation of federal law. *Green*, 474 U.S. at 69 (summarizing the history of the litigation). It was that second injunction that was the subject of the Supreme Court's holding in *Edelman v. Jordan* that the Eleventh Amendment "constitute[s] a bar to that portion of the District Court decree which ordered retroactive payment of benefits found to have been wrongfully withheld." 415 U.S. at 678.

violation of federal law to enjoin in this case, an injunction is not available." 474 U.S. at 71. "Therefore," the Court continued, "notice cannot be justified as a mere case-management device that is ancillary to a judgment awarding valid prospective relief." *Id.* The Court further noted that, in *Quern*, "[t]here was no suggestion that . . . notice would be routinely available as a form of relief in other cases." *Id.*

In short, because the District Court correctly concluded that this case presents no ongoing or continuing violation of federal law, the Eleventh Amendment bars it from issuing any form of notice relief, because such relief would not be "ancillary to the grant of some other appropriate relief that can be 'noticed.'" *Id.* The District Court's contrary conclusion regarding notice relief was therefore erroneous.

> ### 2. The Eleventh Amendment bars a federal court from requiring the Commonwealth Defendants to provide an accounting of forfeited property.

The District Court further erred in concluding that it could order "'a full accounting of all Forfeited Property obtained from Class Members in connection with their criminal cases.'" Add. 17 (quoting Plaintiffs' Second Amended Complaint). Like notice relief, an accounting would be designed to provide information to class members regarding their forfeited property—a matter as to which the District Court has correctly concluded no continuing violation of federal law exists, and as to which it has expressly disclaimed authority to order injunctive relief. Therefore, for the same reasons that the Eleventh Amendment bars a federal

court from ordering notice relief in this case, *see Green*, 474 U.S. at 71; *supra* at 16-19, the Eleventh Amendment also bars a federal court from ordering an accounting of forfeited property.

The District Court's observation that "[c]ompliance with that request [for an accounting] would not entail payment from the state treasury, and it bears no resemblance to a retroactive award of money damages," Add. 17, is beside the point, because as *Quern* and *Green* make clear, a federal court does not have free-floating jurisdiction to order remedies designed to facilitate the redress of a constitutional violation alleged to have occurred in the past. As noted above, the *Ex parte Young* exception depends on the existence of an *ongoing* federal law violation, and no such ongoing violation exists here. And only if there is a "valid injunction previously granted," *Green*, 474 U.S. at 71, may ancillary remedies like an accounting be considered. Here, no such injunction exists, and accordingly the Eleventh Amendment forbids a federal court from ordering a remedy like an accounting—regardless of whether the remedy itself would require expenditure of state funds.

An accounting is barred for an additional reason: it would be extremely burdensome. In holding that notice relief was permissible in *Quern*, the Court repeatedly pointed out that the state officials "ma[de] no issue of the incidental administrative expense connected with preparing and mailing the notice." 440 U.S. at 347; *see also id.* at 347 n.19 ("[A]ny expense associated with the preparation and

mailing of the notice would be *de minimis*."); *Green*, 474 U.S. at 70-71 ("We also stressed [in *Quern*] that the state defendants had not objected to the expense of providing such notice . . . ."). That is in stark contrast to this case, in which an accounting would require manual review of the dockets in thousands of forfeiture proceedings at courthouses across the Commonwealth, often in cases that are many years old. The administrative burden and expense of such an undertaking would be substantial, far exceeding the "*de minimis*" expense of the notice relief approved in *Quern*. 440 U.S. at 347 n.19. For that reason as well, the District Court erred in concluding that it could order the Commonwealth Defendants to undertake a full accounting of forfeited property.

> **3.** **The Eleventh Amendment bars a federal court from requiring additional or more robust procedures in a state court proceeding concerning the return of forfeited property.**

The District Court erred for multiple reasons in concluding that it could require "additional due process protections within a Rule 60(b) hearing," or a "more robust state procedure under the State Act," with respect to the return of forfeited property. Add. 17-18.

First, as with requiring notice or an accounting, such relief may only be awarded if it is "ancillary to a valid injunction previously granted." *Green*, 474 U.S. at 71. Here, no such injunction exists or is possible because—again, as the District Court itself concluded—there is no continuing violation of federal law with respect

to forfeited property. And if there is no such ongoing violation for a federal court to enjoin, there is no basis for the court to order special state court procedures relative to forfeited property. Any such procedures would necessarily relate to alleged violations that occurred in the past.

Second, although the District Court did not specify what "additional" or "more robust" state court procedures it thought might be appropriate, the implementation of any such procedures would be beyond the authority of the individual Commonwealth Defendants. Any such relief would operate on the state courts themselves, making the Commonwealth rather than any individual defendant the real party in interest with respect to such relief. And the Eleventh Amendment bars relief of that kind, regardless of who the named defendant may be.

The Eleventh Amendment bars the federal courts from entertaining a suit that is nominally brought against state officials when the state is the real, substantial party in interest, regardless of whether the suit seeks damages or injunctive relief. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984). Accordingly, courts must look beyond the named parties to determine whether sovereign immunity applies. *Id.* at 101. Where the state is the real, substantial party in interest, a court need not consider the *Ex parte Young* exception, which only applies to claims against state officers. *Stewart*, 563 U.S. at 255 (citing *Pennhurst*, 465 U.S. at 101).

The "general criterion for determining when a suit is in fact against the sovereign is the *effect* of the relief sought." *Stewart*, 563 U.S. at 256 (quoting *Pennhurst*, 465 U.S. at 107) (emphasis in original). "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, *or* interfere with the public administration, *or* if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Pennhurst*, 465 U.S. at 101 n.11 (emphasis added; citation and internal quotation marks omitted). Applying this rule, the Supreme Court has found that the sovereign was the real, substantial party in interest in suits nominally against state officials where the relief sought would quiet title to, and preclude state control of, territory within the state's regulatory jurisdiction, *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 281-82, 287-88; effectively force the restructuring of state mental health care at the state's expense, *Pennhurst*, 465 U.S. at 93, 101 & n.11, 107; require repayment of wrongfully withheld disability benefits, *Edelman*, 415 U.S. at 655-56, 668-69; require the issuance of a tax refund, *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 463-64 (1945); require substantial, unbudgeted expansion of a federal water project, *Dugan v. Rank*, 372 U.S. 609, 610-11, 616, 620-21 (1963); or enjoin activity by state officials that would breach a state's contract, *Ex parte Ayers*, 123 U.S. 443, 502-03, 507 (1887). Similarly, Courts of Appeal have applied the *Pennhurst* rule to find that the state was the real, substantial party in interest when plaintiffs asked

23

federal courts to direct defendants to initiate eminent domain proceedings in state court, *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020), and when plaintiffs have sought remedies relating to property when the "the State holds record title to the Property, utilizes the Property . . . , and the [plaintiff] is attempting to persuade us to declare that title null and void," *Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281, 286 (5th Cir. 2000).

Application of the *Pennhurst* rule requires the same result here. Although the suit is nominally against state officials in their official capacities, the effect of altering existing state court procedures "would actually operate" against the Commonwealth, making the Commonwealth the real, substantial party in interest. *De Leon Lopez v. Corporacion Insular de Seguros*, 931 F.2d 116, 121 (1st Cir. 1991). Without question, a federal court order that state courts alter their procedures when it comes to claims for the return of forfeited property would "interfere with the public administration," and would "restrain the Government from acting, or . . . compel it to act." *Pennhurst*, 465 U.S. at 101 n.11.

It follows that sovereign immunity bars such relief without even reaching the *Ex parte Young* exception. The *Ex parte Young* doctrine is based on the premise "that when a federal court commands a state official to do nothing more than refrain from violating federal law, [the state official] is not the State for sovereign-immunity purposes[,]" and "[t]he doctrine is limited to that precise situation[.]" *Stewart*, 563

U.S. at 255. Any order compelling "additional" or "more robust" state court procedures would not involve a command to a state official to refrain from violating federal law, but rather would compel the Commonwealth to act. Such relief would govern state courts alone, not actions by a state officer to "refrain from violating federal law." Because the effect of such relief would be to compel the Commonwealth to act (regarding the Commonwealth's state court proceedings), the Commonwealth is the real, substantial party in interest, the *Ex parte Young* exception is irrelevant, and sovereign immunity bars the award of such relief. *See Ford Motor Co.*, 323 U.S. at 463 (suit challenging state statute's procedure for refund of taxes illegally exacted provided for action against the state, not the collecting official).

## II. Plaintiffs' Claim for Declaratory Judgment Cannot Act as an End Run Around the Eleventh Amendment's Bar to the Requested Relief.

Because the Eleventh Amendment bars all of Plaintiffs' requests for relief, *see supra* at 12-25, Plaintiffs' request for a declaratory judgment as to "whether Class Members are entitled . . . to the return of all Forfeited Property," R.A. 101, is likewise impermissible. Such declaratory relief could serve only one purpose: to allow Plaintiffs to employ the District Court's declaratory judgment (if entered) as res judicata in Plaintiffs' state court proceedings to recover forfeited property. Essentially, such notice would function as the legal basis on which Plaintiffs could seek relief from the state court's previous forfeiture orders under the State Act or in a Rule 60(b) hearing.

The Supreme Court and First Circuit have established that seeking declaratory relief for the purpose of asserting res judicata in state court proceedings is "an impermissible 'end run' around Eleventh Amendment jurisprudence[.]" *Mills v. Maine*, 118 F.3d 37, 55 (1st Cir. 1997) (citing *Green*, 474 U.S. at 73). Because "the issuance of a declaratory judgment in these circumstances would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment," declaratory relief would not be "an appropriate exercise of federal jurisdiction" here. *Green*, 474 U.S. at 73-74; *see also MSA Realty Corp. v. Illinois*, 990 F.2d 288, 295 (7th Cir. 1993) ("The point of *Green* is that declaratory relief should not be awarded where the eleventh amendment bars an award of monetary and injunctive relief; otherwise, the relief would operate as a means of avoiding the amendment's bar."). Any declaratory judgment relating to the right to recover forfeited property would be just such a means of avoiding the Eleventh Amendment.

## CONCLUSION

For the reasons set forth above, so much of the order of the District Court that denied in part the Commonwealth Defendants' motion to dismiss should be reversed, and the claims against the Commonwealth Defendants should be dismissed in their entirety.

Respectfully submitted,

Defendants-Appellants
ANDREA JOY CAMPBELL, Massachusetts
Attorney General; TIMOTHY SHUGRUE,
Berkshire County District Attorney; THOMAS M.
QUINN, III, Bristol County District Attorney;
ROBERT GALIBOIS, Cape and Islands District
Attorney; PAUL TUCKER, Essex County District
Attorney; ANTHONY GULLUNI, Hampden
County District Attorney; MARIAN RYAN,
Middlesex County District Attorney; MICHAEL
W. MORRISSEY, Norfolk County District
Attorney; DAVID E. SULLIVAN, Northwestern
District Attorney; TIMOTHY J. CRUZ, Plymouth
County District Attorney; KEVIN R. HAYDEN,
Suffolk County District Attorney; JOSEPH D.
EARLY, JR., Worcester County District Attorney;
THOMAS G. AMBROSINO, Administrator of the
Trial Court; and LT. COL. JOHN MAWN, JR.,
Massachusetts State Police Interim Superintendent;
all in their official capacities,

By their attorneys,

ANDREA JOY CAMPBELL
    *Attorney General of Massachusetts*

/s/ Christine Fimognari
Anne Sterman, 1st Cir. No. 124090
Katherine B. Dirks, 1st Cir. No. 1140660
Christine Fimognari, 1st Cir. No. 1198115
    *Assistant Attorneys General*
Government Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 963-2206
June 7, 2024    christine.fimognari@mass.gov

27

# CERTIFICATE OF COMPLIANCE WITH RULE 32

I, Katherine B. Dirks, Assistant Attorney General, hereby certify that:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 6,064 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

/s/ Katherine B. Dirks
Katherine B. Dirks
Assistant Attorney General
*Counsel for the Defendants-Appellants*

Dated:  June 7, 2024

## CERTIFICATE OF SERVICE

I, Katherine B. Dirks, Assistant Attorney General, hereby certify that on June 7, 2024, the above document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and a true copy will be emailed to those indicated as non-registered participants.

/s/ Katherine B. Dirks
Katherine B. Dirks
Assistant Attorney General
*Counsel for the Defendants-Appellants*

Dated:  June 7, 2024

# **ADDENDUM**

# Addendum Table of Contents

District Court Memorandum & Order on the Motions
to Dismiss (ECF No. 131) ............................................................... Add. 1

Declaratory Judgment, *Bridgeman v. Dist. Attorney for Suffolk Cnty.*,
SJ-2014-0005 (Mass. Sup. Jud. Ct. for Suff. Cnty. Apr. 19, 2017) .............. Add. 25

Final Approval Order, *Foster v. Commonwealth of Massachusetts*, No.
1984CV03373-C (Mass. Super. Ct., Oct. 6, 2022) ...................................... Add. 27

Order on Def.'s Motion for Refund of Fees and Forfeited Funds,
*Commonwealth v. Chhot*, No. 0673CR00937 (Mass. Super. Ct.
Aug. 7, 2020) ............................................................................... Add. 32

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Jennifer COTTO, David CUMMINGS, Jamie KIMBALL, Todd MOTON, and Travis MORAN on behalf of themselves and all others similarly situated, | * * * * * | |
| Plaintiffs, | * * | |
| v. | * * | |
| Andrea Joy CAMPBELL, Massachusetts Attorney General; Timothy SHUGRUE, Berkshire County District Attorney; Thomas M. QUINN, III, Bristol County District Attorney; Robert GALIBOS, Cape and Islands District Attorney; Jonathan BLODGETT, Essex County District Attorney; Anthony GULLUNI, Hampden County District Attorney; Marian RYAN, Middlesex County District Attorney; Michael W. MORRISSEY, Norfolk County District Attorney; David E. SULLIVAN, Northwestern District Attorney; Timothy J. CRUZ, Plymouth County District Attorney; Kevin R. HAYDEN, Suffolk County District Attorney; Joseph D. EARLY, JR., Worcester County District Attorney; John A. BELLO, Administrator of the Trial Court; Christopher MASON, Massachusetts State Police Superintendent; SPRINGFIELD POLICE DEPARTMENT; BOSTON POLICE DEPARTMENT; BROCKTON POLICE DEPARTMENT; and FALL RIVER POLICE DEPARTMENT, on behalf of themselves and all others similarly situated, | * * * * * * * * * * * * * * * * * * * * * * * * * | Civil Action No. 1:18-cv-10354-IT |
| Defendants. | * * | |

MEMORANDUM & ORDER

November 13, 2023

TALWANI, D.J.

Add. 1

Plaintiffs are five individuals whose Massachusetts drug convictions have been vacated and dismissed but whose forfeited property has not been returned to them. They bring this putative class action on their own behalf and on behalf of all others similarly situated against various Massachusetts state officials and municipal police departments. Invoking the Fourteenth and Eighth Amendments to the U.S. Constitution and state statutory and common law, Plaintiffs seek the restoration of the forfeited property. Pending before the court are Defendants' Motions to Dismiss [Doc. Nos. 109, 114, 115, 118, 120] asserting, inter alia, that Plaintiffs' claims are barred by sovereign immunity, various abstention doctrines, and the statute of limitations.

I.      **Background**

A.  *The Supreme Judicial Court's Decisions Vacating Drug Convictions*

For a period of years beginning in the mid-2000s, two state forensic chemists, Annie Dookhan and Sonja Farak, tampered with evidence, falsified drug test results, and committed perjury—with repercussions for tens of thousands of defendants charged with drug-related offenses. On April 19, 2017, the Single Justice of the Massachusetts Supreme Judicial Court ("SJC") vacated and dismissed with prejudice 21,587 drug cases that had been tainted by Dookhan's misconduct. Bridgeman v. District Attorney for Suffolk County, SJ-2014-0005 (Apr. 19, 2017). On June 18, 2018, the Single Justice of the SJC vacated and dismissed with prejudice over 7,500 drug cases that had been tainted by Farak's misconduct. Committee for Public Counsel Services v. Attorney General of Massachusetts, SJ-2017-347 (June 18, 2018). On October 11, 2018, the SJC held that the convictions of "all defendants who pleaded guilty to a drug charge, admitted to sufficient facts on a drug charge, or were found guilty of a drug charge, where (i) Farak signed the certificate of analysis; (ii) the conviction was based on methamphetamine and the drugs were tested during Farak's tenure at the Amherst lab; or (iii) the

drugs were tested at the Amherst lab on or after January 1, 2009, and through January 18, 2013, regardless of who signed the certificate of analysis" were vacated and dismissed with prejudice. Comm. for Pub. Counsel Servs. v. Attorney Gen., 480 Mass. 700, 734-735, 108 N.E.3d 966 (Mass. 2018).

On March 20, 2019, the Single Justice of the SJC vacated and dismissed with prejudice an additional 7,500-plus cases tainted by Farak's misconduct. Committee for Public Counsel Services v. Attorney General of Massachusetts, SJ-2017-347 (Mar. 20, 2019).

B. *Commonwealth v. Martinez*

On October 30, 2018, in a case brought by two individuals whose criminal convictions had been invalidated, the SJC concluded that the due process clause of the Fourteenth Amendment required the repayment of appellants' probation fees, victim-witness assessments, restitution, fines, and court costs. Commonwealth v. Martinez, 480 Mass. 777, 779, 109 N.E.2d 459 (Mass. 2018). One appellant also sought the return of her civilly forfeited assets, arguing that the forfeiture order against her was "for all practical purposes, [] a consequence of the invalidated drug convictions" and should therefore also be invalidated as a matter of due process. Id. at 791. The SJC disagreed, citing the provision in the Massachusetts Controlled Substances Act ("State Act"), Mass. Gen. Laws Ann. ch. 94C, § 47 (West 2018), for a civil in rem forfeiture proceeding, which is subject to a different burden of proof than the criminal proceeding. As a result of that distinction, the SJC held that the appellant was not entitled to the automatic return of her forfeited assets because "[t]he finding of probable cause of nexus that sufficed to order forfeiture in the civil proceeding did not depend on the finding in the criminal proceeding of sufficient evidence to warrant a finding of guilt on the plea." Martinez, 480 Mass. at 791. However, the SJC also noted that "the reasons for invalidating a conviction potentially may

3

Add. 3

warrant relief from [a] civil judgment of forfeiture"—but that the "issue must be separately litigated in the civil forfeiture proceeding through a motion for relief from judgment [under Rule 60(b)]." Id. at 791-792. The SJC did not address whether or to what extent the Rule 60(b) procedure should be modified to provide appropriate due process protections for individuals whose convictions had been invalidated.

C.   *The State Act*

The State Act authorizes the forfeiture of, inter alia, money and/or property related to a wide range of drug offenses. M.G.L. ch. 94C, § 47(a)(3), (5). A forfeiture proceeding can be brought either (a) through a civil in rem action filed in Superior Court, M.G.L. ch. 94C, § 47(d), or (b) by motion in a related criminal case in District or Superior Court, M.G.L. ch. 94C, § 47(b).

Under the State Act, the prosecution must demonstrate probable cause to institute a forfeiture action. M.G.L. ch. 94C, § 47(d). Once probable cause has been established, the defendant has the burden to demonstrate that the property is not forfeitable, id., i.e. was not "used or intended to be used" to commit or facilitate one of the enumerated drug-related crimes. See M.G.L. ch. 94C, § 47(a)(3), (5), (7). Forfeited assets, or the proceeds of the sale of those assets, are divided between the prosecuting District Attorneys (or Attorney General) and the participating police departments. M.G.L. ch. 94C, § 47(d).

D.   *The Initial Complaint*

In 2018, Plaintiff Kimball and several others[1] sued the Commonwealth of Massachusetts and various state and local officials. Complaint [Doc. No. 1]; First Amended Class Action Complaint [Doc. No. 27]. With the consent of all parties, the case was stayed from January 31,

---

[1] Plaintiffs Stacy Foster, Jonathan Riley, and Nicole Westcott have since been terminated from this action.

2019, through October 11, 2022, to permit the resolution of certain matters in state court and by

settlement. Order Allowing Joint Motion to Stay Proceedings [Doc. No. 39]; Order Lifting Stay

[Doc. No. 77].

      E.    *The Second Amended Complaint*

      On February 3, 2023, Plaintiffs filed the operative <u>Second Amended Class Action</u>

<u>Complaint</u> [Doc. No. 86] on their own behalf and on behalf of all others similarly situated.

      1.    Plaintiffs

      a.    Plaintiff Jennifer Cotto

      On or about April 1, 2008, Springfield police officers arrested Cotto and seized $518 cash

from her possession. Am. Compl. ¶ 19 [Doc. No. 86]. On January 27, 2009, in Springfield

District Court, Cotto admitted [that] there were sufficient facts to find her guilty of possessing a

Class B substance with the intent to distribute. <u>Id.</u> The court entered a continuance without a

finding and sentenced her to one year of probation. <u>Id.</u> On the day of Cotto's plea, the prosecutor

filed a motion in the criminal case to forfeit the $518 that had been seized upon her arrest. <u>Id.</u> As

part of her plea agreement, Cotto did not contest the forfeiture order. <u>Id.</u> The court allowed the

forfeiture, and the $518 was split between the Hampden County District Attorney's Office and

the Springfield Police Department. <u>Id.</u> On December 13, 2018, due to Farak's misconduct, the

SJC vacated the disposition in Cotto's criminal case. <u>Id.</u> Plaintiffs contend that in light of such

misconduct, the Commonwealth does not have reliable evidence that Cotto possessed a Class B

substance. <u>Id.</u> Cotto's forfeited property has not been returned to her. <u>Id.</u>

      b.    Plaintiff David Cummings

      On or about January 22, 2010, Marshfield police officers arrested Cummings and seized

$14,189 in cash from his residence. <u>Id.</u> ¶ 20. On December 2, 2010, in Plymouth District Court,

Cummings admitted there were sufficient facts to find him guilty of possessing a Class B substance with the intent to distribute. Id. As part of Cummings' plea agreement, both parties recommended forfeiture of the $14,189. Id. The court adopted the recommendation, entered a continuance without a finding, sentenced Cummings to two years of probation, and ordered that Cummings forfeit the $14,189 as a special condition of his probation. Id. The money was divided between the Plymouth County District Attorney's Office and the Marshfield Police Department. Id. On April 19, 2017, due to Dookhan's misconduct, the SJC vacated the disposition in Cummings's case. Id. Plaintiffs contend that in light of such misconduct, the Commonwealth does not have reliable evidence that Cummings possessed a Class B substance. Id. Cummings's forfeited property has not been returned to him. Id.

        c.        Plaintiff Jamie Kimball

On or about December 15, 2009, Lawrence police officers arrested Kimball and seized $2,182 in cash and money orders from her residence. Id. at ¶ 21. On April 27, 2011, in Lawrence District Court, Kimball admitted there were sufficient facts to find her guilty of possessing a Class A substance. Id. Kimball did not contest the civil *in rem* forfeiture action filed by the prosecution in Essex County Superior Court. Id. On June 30, 2010, a default judgement in that action was entered against her. Id. Kimball's forfeited property was divided between the Essex County District Attorney's Office and the Lawrence Police Department. Id. On April 19, 2017, due to Dookhan's misconduct, the SJC vacated the disposition in Kimball's case. Id. Plaintiffs contend that in light of such misconduct, the Commonwealth does not have reliable evidence that Kimball possessed a Class A substance. Id. Kimball's forfeited property has not been returned to her. Id.

d.      Plaintiff Todd Moton

On or about October 9, 2009, Pittsfield police officers arrested Moton and seized $878 in cash from his possession. Id. at ¶ 22. Moton pleaded guilty to various drug offenses. Id. On the day of his plea, the prosecution filed a motion to forfeit the $878 in cash; as part of his plea agreement, Moton did not contest the forfeiture order. Id. Moton's forfeited property was divided between the Berkshire County District Attorney's Office and the Pittsfield Police Department. Id. On December 13, 2018, due to Farak's misconduct, the SJC vacated Moton's convictions. Id. Plaintiffs contend that in light of such misconduct, the Commonwealth does not have reliable evidence that Moton possessed any controlled substances. Id. Moton's forfeited property has not been returned to him. Id.

e.      Plaintiff Travis Moran

On or about January 6, 2006, Springfield police officers arrested Moran for various drug offenses and for carrying a firearm without a license. Id. at ¶ 23. At the time of his arrest, Moran was operating a 1994 Honda Accord and possessed $4,528 in cash. Id. On February 3, 2006, the Hampden County District Attorney's Office filed a civil *in rem* action in Hampden County Superior Court against Moran's money and vehicle. Id. On July 31, 2006, Moran pleaded guilty in Hampden County Superior Court to the various drug offenses and to carrying a firearm without a license. Id. On the day of the plea hearing, the prosecution filed a motion in the criminal case to forfeit the $4,528 in cash and the 1994 Honda Accord. Id. As part of his plea agreement, Moran did not contest the motion, which the court allowed. Id. On September 13, 2006, the District Attorney dismissed the in rem action. Id. Moran's forfeited property was divided between the Hampden County District Attorney's Office and the Springfield Police Department. Id. On April 5, 2018, due to Farak's misconduct, the SJC vacated Moran's

convictions. Id. Plaintiffs contend that in light of such misconduct, the Commonwealth does not

have reliable evidence that Moton possessed any controlled substances. Id. Moran's forfeited

property has not been returned to him. Id.

    2.     Defendants

       a.  Commonwealth Defendants

Plaintiffs have named as Defendants the following state officials in their official capacity:

the Massachusetts Attorney General; the Administrator of the Trial Court; the Massachusetts

State Police Superintendent; and the District Attorneys for Berkshire, Bristol, Cape and Islands,

Essex, Hampden, Middlesex, Norfolk, Northwestern, Plymouth, Suffolk, and Worcester

Counties (collectively, the "Commonwealth Defendants").

       b.    Local Government Entities

Plaintiffs have also named the following local government entities as Defendants: the

Springfield Police Department; the Boston Police Department; the Brockton Police Department;

and the Fall River Police Department.[2]

    3.    Plaintiffs' Claims

In light of the invalidation of their convictions, Plaintiffs assert that Defendants are

unlawfully continuing to withhold Plaintiffs' forfeited property. Plaintiffs bring claims for

Declaratory Judgment (Count I), Fourteenth Amendment violations (Counts II-III), an Eighth

Amendment violation (Count IV), and Unjust Enrichment (Count V). Id. at ¶¶ 151-177.[3]

---

[2] Plaintiffs also assert claims against a Defendant Class of law enforcement agencies. Id. at
¶¶ 141-150.

[3] Plaintiffs also allege that the Defendants did not comply with the State Act in carrying out the
initial forfeiture actions by, e.g., ordering forfeiture as part of criminal sentences rather than civil
in rem proceedings, failing to provide adequate notice, and/or moving for forfeiture in simple
possession cases. Id. at ¶¶ 71-72; 81-83; 85-88.

Plaintiffs request injunctive relief in the form of the "return of all Forfeited Property that was taken from them in connection with their vacated, wrongful convictions," as well as notice to all Class Members and accounting of all Forfeited Property. Id. at ¶ 179.

F. *The Pending Motions*

The Commonwealth Defendants filed a Motion to Dismiss [Doc. No. 109], contending that Plaintiffs' claims are barred by sovereign immunity, Younger abstention, the Rooker-Feldman doctrine, Colorado River abstention, the statute of limitations, and Rule 12(b)(6) failure to state a claim. Commw. Mem. MTD [Doc. No. 110]. The Boston Police Department filed a Motion to Dismiss [Doc. No. 114], adopting the Commonwealth Defendants' arguments about Younger abstention, the Rooker-Feldman doctrine, Colorado River abstention, the statute of limitations, and Rule 12(b)(6). It also objected to the certification of a Defendant Class encompassing all police departments in the Commonwealth. Id. at 2. The Springfield Police Department filed a Motion to Dismiss [Doc. No. 118] bringing the same arguments as the Boston Police Department. Springfield Mem. MTD [Doc. No. 119]. The Fall River Police Department filed a Motion to Dismiss [Doc. No. 120] based on failure to state a claim and the statute of limitations. Fall River Mem. MTD [Doc. No. 121]. Finally, the City of Brockton ("Brockton") filed a Motion to Dismiss [Doc. No. 115] claims against the Brockton Police Department, adopting the Commonwealth Defendants' arguments regarding Younger abstention, the Rooker-Feldman doctrine, and the statute of limitations. Brockton Mem. MTD 12-13 [Doc. No. 116]. Brockton also argued that Plaintiffs' claims against the municipal police departments fail to state a Monell claim as required to allege a Section 1983 violation against a local government entity. Id. at 8-12.

Plaintiffs filed an omnibus <u>Opposition</u> [Doc. No. 126] to the five <u>Motions to Dismiss</u>. The Commonwealth Defendants alone filed a <u>Reply</u> [Doc. No. 127].

## II.    Standard of Review

Rule 12(b)(1) is "[t]he proper vehicle for challenging a court's subject matter jurisdiction." <u>Valentin v. Hosp. Bella Vista</u>, 254 F.3d 358, 362 (1st Cir. 2001). Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. <u>Viqueira v. First Bank</u>, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. <u>Id.</u> A court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. <u>Fothergill v. United States</u>, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. <u>Id.</u>

A challenge to the court's subject matter jurisdiction must generally be addressed before addressing the merits of a case. <u>See</u> <u>Acosta-Ramírez v. Banco Popular de Puerto Rico</u>, 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case"). This is particularly so where a defendant claims sovereign immunity, as the "value to the States of their Eleventh Amendment immunity . . . is for the most part lost as litigation proceeds past motion practice." <u>Puerto Rico Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 145 (1993).

### III.    Discussion

A.  *Sovereign Immunity*

The Commonwealth Defendants contend that this action must be dismissed based on sovereign immunity.[4] Sovereign immunity bars suits against the State from proceeding in federal court "unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." Green v. Mansour, 474 U.S. 64, 68 (1985). "The landmark case of Ex parte Young, 209 U.S. 123, created an exception to this general principle by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." Id. Because the Commonwealth Defendants are all state officials and have been accused of unconstitutional acts, Ex parte Young would, at first blush, seem to apply.

However, the Supreme Court has cabined the scope of Ex parte Young in subsequent cases. First, the Court "ha[s] refused to extend the reasoning of Young . . . to claims for retrospective relief." Green, 474 U.S. at 68; accord Verizon Md., Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 645 (2002). This distinction permits "[r]emedies designed to end a continuing violation of federal law" that "are necessary to vindicate the federal interest in assuring the supremacy of that law" to go forward in federal court, Green, 474 U.S. at 68, "while at the same time preserving to an important degree the constitutional immunity of the States" by barring suits that effectively seek damages against the State itself, Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984).

---

[4] Although Plaintiffs characterize the Police Departments as "state officials," Pl.'s Oppo 5 [Doc. No. 126], the Police Departments do not assert that they are protected by sovereign immunity.

The Supreme Court has cautioned further that even strict adherence to the "prospective injunctive relief" distinction will not necessarily lead to an outcome that comports with the purposes of sovereign immunity:

> To interpret [Ex parte] Young to permit a federal-court action to proceed in every case where prospective declaratory and injunctive relief is sought against an officer, named in his individual capacity, would be to adhere to an empty formalism and to undermine the principle . . . that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction.

Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270 (1997).

Second and relatedly, the Supreme Court has declined to extend Ex parte Young to cases where the relief sought, even if equitable in nature, "will to a virtual certainty be paid from state funds, and not from the pockets of the individual state officials who were the defendants in the action." Edelman v. Jordan, 415 U.S. 651, 668 (1974). The Court has explained that even where a "retroactive award of monetary relief" could be described as a "form of 'equitable restitution,' it is in practical effect indistinguishable in many aspects from an award of damages against the State." Id.; see also id. at 668-69 (on a claim seeking "equitable restitution" for return of monies a taxpayer had paid over to the State pursuant to an allegedly unconstitutional tax exaction, the Court "had no hesitation in holding that the taxpayer's action was a suit against the State, and barred by the Eleventh Amendment"); Idaho, 521 U.S. at 277 ("'[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.'") (citing Ford Motor Co. v. Dep't of Treasury of Ind., 323 U.S. 459, 464 (1945) (overruled on other grounds)). Thus, in conducting its analysis, the court must rely not only on the distinction between prospective and retroactive relief, but also on the "practical effect" of that relief against the state treasury. See Edelman, 415 U.S. at 668; accord Quern v.

Jordan, 440 U.S. 332, 346-47 (1979) (overruled on other grounds) (framing the inquiry as

whether the remedy "constitute[s] permissible prospective relief or a 'retroactive award which

requires the payment of funds from the state treasury'").

 As a result of these nebulous distinctions, "the difference between the type of relief

barred by the Eleventh Amendment and that permitted under Ex parte Young will not in many

instances be that between day and night." Edelman, 415 U.S. at 667.

 1. The Ex parte Young exception to sovereign immunity does not apply where the effect
   of the court's order would be an award of monetary relief from the state treasury.

 Defendants argue that this lawsuit is barred by Eleventh Amendment sovereign

immunity, because the Commonwealth is the "real, substantial party in interest," Commw. Mem.

MTD 5 [Doc. No. 110], and because Plaintiffs seek "quintessentially retroactive relief," id. at 6.

Further, Defendants argue that the Ex parte Young exception to sovereign immunity does not

apply because "when a plaintiff sues a state official alleging a violation of federal law, the

federal court may award an injunction that governs the official's future conduct, but not one that

awards retroactive monetary relief." Id. (citing Pennhurst, 465 U.S. at 102-103). Defendants rely

heavily on the reasoning in Edelman, see Commw. Mem. MTD 7 [Doc. No. 110], in which the

Supreme Court held that the Eleventh Amendment barred a claim for "equitable restitution" that

would have required state defendants to pay back withheld benefits. 415 U.S. at 666-669.

 In response, Plaintiffs do not deny that their requests for the return of their forfeited

property and for restitution would have to be satisfied by the payment of money, and that the

money would come from the State. Instead, they argue that Defendants' failure to return their

forfeited property is a continuing violation of federal law that can be remedied by an order from

the court merely directing the Defendants to comply with the Constitution. Pl.'s Oppo 9-10 [Doc.

No. 126]. As a result, say the Plaintiffs, an order from the court that the withholding of forfeited

property is a constitutional violation would fall within the scope of the Ex parte Young

exception. Id. at 5-6. The Plaintiffs point to Milliken v. Bradley, 433 U.S. 267 (1977), as the

primary support for this argument.

      In Milliken, the Supreme Court considered whether a federal court could order a state to

help fund a plan designed to remediate decades of de jure segregation in the Michigan public

school system. 433 U.S. at 270-271. The district court's final order directed the Detroit School

Board and the State to "institute comprehensive programs as to the four educational components

[reading, in-service training, testing, and counseling] by the start of the . . . school term." Id. at

277. The cost of the remedy proposed by the district court—and informed by extensive

consultation with state experts—"was to be equally borne by the Detroit School Board and the

State." Id. The Supreme Court held that the order did not violate the Eleventh Amendment,

drawing a line between the "future costs of educational components" and "award of an accrued

monetary liability." Id. at 289. The Court further explained the distinction:

> The educational components, which the District Court ordered into effect
> prospectively, are plainly designed to wipe out continuing conditions of inequality
> produced by the inherently unequal dual school system long maintained by Detroit.
> These programs were not, and as a practical matter could not be, intended to wipe
> the slate clean by one bold stroke, as could a retroactive award of money.

Id. at 290.

      Milliken, however, does not help Plaintiffs here. As a threshold matter, Plaintiffs'

argument that repayment would remedy a continuing wrong rather than a past one is

unpersuasive: This sort of "formal distinction" between Defendants' "continuing obligation" to

remedy their legal violation and their "ongoing liability" for a past injury is "of the sort [the

Supreme Court] rejected" in articulating its retroactive relief test. See Papasan v. Allain, 478

U.S. 265, 280 (1986).

Moreover, here—unlike in <u>Milliken</u>—Plaintiffs ask the state for a remedy that is effectively "designed to give [them] back something [they] lost"—the direct repayment of their forfeited assets. <u>See</u> <u>Whalen v. Mass. Trial Court</u>, 397 F.3d 19, 30 (1st Cir. 2005). That is true whether the remedy is styled as an order enjoining Defendants from violating the Constitution by withholding assets, or whether the remedy is styled as an order directing the Defendants to return those assets. Under either order, the Commonwealth could not rectify its constitutional violation, or come into compliance with the law, by any means short of the "return of all Forfeited Property." Thus, to remedy Plaintiffs' claims that the withholding itself is a violation of federal law, this court would have to authorize an "award of an accrued monetary liability," <u>see</u> <u>Milliken</u>, 433 U.S. at 289, that would "to a virtual certainty be paid from state funds," <u>see</u> <u>Edelman</u>, 415 U.S. at 668. That avenue of recourse is barred by the Eleventh Amendment.

Further, Plaintiffs' reliance on First Circuit cases to circumvent sovereign immunity are also inapposite: The cases in which the First Circuit has authorized relief that "required payment of money directly from a state treasury to bring about compliance" involve instances of a state failing to comply with a federal-state assistance program that required the state to make regular payments to beneficiaries on a pre-set schedule. <u>See</u> <u>Coal. for Basic Human Needs v. King</u>, 654 F.2d 838, 842 (1st Cir. 1981) (enjoining states to continue making payments pursuant to the Aid to Families with Dependent Children program established by the federal Social Security Act); <u>Roselli v. Affleck</u>, 508 F.2d 1277 (1st Cir. 1974) (similar). Notably, the First Circuit has not gone so far as to enjoin the state to make payments that were authorized or controlled by state law alone. <u>See</u> <u>Coal. for Basic Human Needs</u>, 654 F.2d at 843 (injunction did not include any directive as to the Massachusetts program of General Relief, which was also at issue in the case).

Because this case is neither about funds nor about a federal-state arrangement, the First Circuit's reasoning is inapplicable here.

2.      The Commonwealth Defendants are Not Stripped of Sovereign Immunity

Plaintiffs contend that because they have brought an as-applied challenge to the constitutionality of the State Act, sovereign immunity is no bar to their suit in federal court. Pl.'s Oppo 11 [Doc. No. 126]. More specifically, Plaintiffs argue that Defendants acted *ultra vires* in enforcing the State Act against them, as such enforcement is an unconstitutional violation of their due process rights. Id. But the cases cited by Plaintiffs to support that proposition are inapposite, as they deal with the issue of sovereign immunity as it applies to *federal* officers—not state officers. See Muirhead v. Mecham, 427 F.3d 14, 18 (1st Cir. 2005); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 686 (1949). Effectively, a challenge to the constitutionality of a state statute as applied by a state official is a contention that the state official violated federal law—the law in question being the Constitution of the United States. And as discussed, those claims are governed by Ex parte Young, which does not include an "ultra vires" exception. Even if this were not the case, Defendants are not acting "without any authority whatsoever" by their current failure to return forfeited assets, see Pl.'s Oppo 11 [Doc. No. 126] (citing Pennhurst, 465 U.S. at 102 n.11), where those assets were seized pursuant to a state statute whose *facial* constitutionality is not in question.[5]

---

[5] Plaintiffs also allege that in some cases, state officials did not lawfully seize the forfeited assets, because they did not adhere to the procedures outlined in the State Act. Pl.'s Oppo 11-12 [Doc. No. 126]. In particular, several of the named Plaintiffs allegedly did not receive the seven days' notice of forfeiture proceedings required by due process. Am. Compl. ¶¶ 19, 22-23 [Doc. No. 86]. Plaintiffs appear to assert that those defects rendered the state officials' actions *ultra vires*. Pl.'s Oppo 11 [Doc. No. 126]. But that a state official's "conduct is contrary to a state statute" is not a basis to find that such conduct is *ultra vires*: That line of reasoning has been foreclosed by the Supreme Court. See Pennhurst, 465 U.S. at 106-107("[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not

3.      Plaintiffs' Claims for Prospective, Procedural Injunctive Relief Are Not
        Barred by Sovereign Immunity

Where portions of Plaintiffs' requested relief are classic examples of prospective

injunctive relief, the Ex parte Young exception to sovereign immunity does apply. Defendants do

not address these requests for relief head-on, but instead treat them as part of a general category

of "procedural obligations" that "in practice resemble a money judgment payable out of the state

treasury." Commw. Mem. MTD 6 [Doc. No. 110] (quoting Edelman, 415 U.S. at 666). It is true

that Plaintiffs also request administrative and procedural tools to support the return of their

forfeited property, Am. Compl. ¶179(b) [Doc. No. 86]. But it mischaracterizes Plaintiffs' request

to treat all of their requested remedies as effectively tied to the return of their forfeited assets.

Rather, Plaintiffs make a specific request for "a full accounting of all Forfeited Property obtained

from Class Members in connection with their criminal cases." Id. at ¶ 179(c). Compliance with

that request would not entail payment from the state treasury, and it bears no resemblance to a

retroactive award of money damages. Additionally, Plaintiffs request that the court "notify Class

Members of their rights to the return of all Forfeited Property." Id. at ¶ 179(a). As discussed, the

court cannot order, directly or indirectly, the return of forfeited assets. However, to the extent

Plaintiffs' request can be read generally to include notification of their rights to a more robust

state procedure under the State Act, or their rights to pursue relief under Rule 60(b), the court is

permitted to grant such relief. Indeed, that was the crux of the Supreme Court's holding in

Quern, 440 U.S. at 347-48 ("The notice . . . simply apprises plaintiff class members of the

---

vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater
intrusion on state sovereignty than when a federal court instructs state officials on how to
conform their conduct to state law."). As a result, Plaintiffs have failed to allege that procedural
violations related to the forfeiture proceedings (Am. Compl. ¶¶ 71-89, 117, 160 [Doc. No. 86];
Pl.'s Oppo 11 [Doc. No. 126]) rise to the level of *ultra vires* actions, such that sovereign
immunity no longer applies.

Add. 17

existence of whatever administrative procedures may already be available under state law by which they may receive a determination of eligibility for past benefits.").

Similarly, if the court were to order additional procedural due process protections within a Rule 60(b) hearing, it would not change the fact that "whether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, courts, and legislature, not with the federal court." See id. at 348. As a result, the court retains authority to order such relief even if these injunctive remedies might have ancillary effects on the state treasury. See Milliken, 433 U.S. at 289 ("the prospective-compliance exception" to Eleventh Amendment immunity "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury").

Because Plaintiffs' claims include requests for relief other than an order from this court directing the payment of money from the state, the court is not barred from entertaining Plaintiffs' constitutional challenges for such other relief.

B.   *The Statute of Limitations Bars Plaintiffs' Claims Related to Errors in Their Initial Forfeiture Proceedings.*

All Defendants argue that Plaintiffs' claims that their initial forfeiture proceedings were erroneous as a matter of law are time-barred. Comm. Mem. MTD 20 [Doc. No. 110]; Fall River Mem. MTD 3 [Doc. No. 121]; Springfield Mem. MTD 7 [Doc. No. 119]; Boston MTD 1 [Doc. No. 114]; Brockton Mem. MTD 13 [Doc. No. 116]; Commw. Reply 14 [Doc. No. 127]. Plaintiffs respond that their claims relate solely to the unlawful withholding of forfeited property that has occurred and continues to occur since their convictions were vacated, and that the statute of limitations on those claims did not begin to run until 2017. Pl.'s Oppo 26-29 [Doc. No. 126]. The court concludes that claims that the continued withholding of property is unlawful because the convictions have been vacated are not time-barred.

18

To the extent Plaintiffs also seek to challenge the procedures underlying their original

forfeiture proceedings, however, Defendants are correct that Plaintiffs could have raised those

challenges at any time after the alleged error occurred. And because the Defendants' continuing

alleged violation of federal law (the withholding of their property) does not relate to those initial

procedural errors, it does not toll the statute of limitations as to those claims. As a result, the

statute of limitations as to those procedural challenges began to accrue at the time of the

forfeiture proceedings, not at the time of the SJC's vacatur of the drug convictions. Those

challenges are therefore time-barred.

    C. *Younger Abstention Does Not Apply*

All Defendants also contend that Plaintiffs' claims are barred by Younger abstention.

Commw. Mem. MTD 8 [Doc. No. 110]; Fall River Mem. MTD 1 [Doc. No. 121]; Springfield

Mem. MTD 3 [Doc. No. 119]; Brockton Mem. MTD 12 [Doc. No. 116]; Boston MTD 1 [Doc.

No. 119]. "Younger is a court-made rule of abstention built around the principle that, with

limited exceptions, federal courts should refrain from issuing injunctions that interfere with

ongoing state-court litigation, or, in some cases, with state administrative proceedings." Maymó-

Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 31 (1st Cir. 2004). "[T]he underlying concern is that

state proceedings, once begun, should be respected by federal courts so long as the federal claims

or defenses can be litigated in the course of those proceedings." Id. at 32. Importantly, "whether

federal courts should be able to interfere with ongoing state proceedings is quite distinct and

separate from the issue of whether [federal] litigants are entitled to subsequent federal review of

state-court dispositions of federal questions." Huffman v. Pursue, Ltd., 420 U.S. 592, 606 (1975).

Defendants argue that Plaintiffs are engaged in an "ongoing" civil proceeding, because there is

still some existing state appellate process that could resolve Plaintiffs' claims. See Commw. Mem. MTD 8-9 [Doc. No. 110]. The court disagrees.

First, the court declines to adopt Defendants' argument that a Rule 60(b) procedure constitutes an unexhausted state appellate remedy such that Plaintiffs' state forfeiture proceedings should be considered "ongoing." Defendants are incorrect that a Rule 60(b) motion is a direct appellate remedy, as contemplated by Huffman, 420 U.S. at 610, rather than a collateral remedy: The Rule itself expressly states that a motion pursuant to Rule 60(b) "does not affect [a] judgment's finality or suspend its operation." Defendants' reliance on Sirva Relocation, LLC v. Richie, 794 F.3d 185 (1st Cir. 2015), see Commw. Mem. MTD 8-9 [Doc. No. 110], to support their assertion is also misplaced. In that case, the state had "conducted a pre-hearing conference, and scheduled an adjudicative hearing" that had not yet transpired before the plaintiffs sued in federal court— actions the First Circuit held "conclusively show[ed] the existence of an ongoing state proceeding that is judicial in nature." Sirva, 794 F.3d at 196. Nothing of the sort has occurred here. The state has not begun any procedures related to a Rule 60 hearing, because the Plaintiffs have not initiated that collateral action. Therefore, there are no ongoing state proceedings into which this court could intervene.

Second, while it is true that Younger abstention bars federal challenges to civil forfeiture proceedings "before the forfeiture hearing in state court" has occurred, see Loch v. Watkins, 337 F.3d 574, 577 (6th Cir. 2003), or where those proceedings "were pending in state court at the time" the federal action was initiated, see Postscript Enterprises, Inc. v. Peach, 878 F.2d 1114, 1116 (8th Cir. 1989), that is not the situation here. The civil forfeiture proceedings in which these Plaintiffs had their assets seized have long since concluded in state court. See Am. Compl.

¶¶ 18-22 [Doc. No. 86] (describing named Plaintiffs' forfeiture proceedings); Pl.'s Oppo 14
[Doc. No. 126].

      D.  *The Rooker-Feldman Doctrine Does Not Apply*

Under the <u>Rooker-Feldman</u> doctrine, "lower federal courts are precluded from exercising
appellate jurisdiction over final state-court judgments." <u>Lance v. Dennis</u>, 546 U.S. 459, 463
(2006). The doctrine exists to prevent "cases brought by state-court losers complaining of
injuries caused by state-court judgments rendered before the district court proceedings
commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil
Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).

Defendants contend that <u>Rooker-Feldman</u> applies here, "because [Plaintiffs] seek to have
this Court review and overturn thousands of state court judgments." Commw. Mem. MTD 11
[Doc. No. 110]; <u>see</u> Brockton Mem. MTD 12 [Doc. No. 116]; Fall River Mem. MTD 1 [Doc.
No. 121]; Springfield Mem. MTD 4-5 [Doc. No. 119]; Boston MTD 1 [Doc. No. 114]. But, as
discussed above, Plaintiffs are not seeking this court's direct review of their state court forfeiture
proceedings; even if they were, the statute of limitations would bar those claims. Rather,
Plaintiffs are challenging the inadequate constitutional protections afforded *after* those
proceedings have concluded, where criminal defendants like Plaintiffs have been deemed legally
innocent but must nevertheless shoulder a burden of proof in order to return to their pre-
conviction status quo. That challenge does not implicate the validity of any original forfeiture
proceeding, nor does it require this court to undertake a substantive review of the state court's
determination on the issue. <u>See</u> <u>Skinner v. Switzer</u>, 562 U.S. 521, 532 (2011) ("If a federal
plaintiff present[s] [an] independent claim, it is not an impediment to the exercise of federal

jurisdiction that the same or a related question was earlier aired between the parties in state court.") (alterations in original) (internal citations omitted).

Defendants also argue that Plaintiffs are seeking this court's review of the SJC's decision in Martinez. Commw. Mem. MTD 12 [Doc. No. 110]. Critically, and fatally to Defendants' position, Plaintiffs were not parties to Martinez, and so they are not "aggrieved litigant[s]" seeking this court's review of a judgment entered against them in state court. See Tyler v. Sup. Jud. Ct. of Mass., 914 F.3d 47, 50 (1st Cir. 2019); accord Johnson v. DeGrandy, 512 U.S. 997, 1006 (1994) (plaintiff "was not a party in the state court" and therefore was "in no position to ask [for] review [of] the state court's judgment").[6] What is more, some of Plaintiffs' constitutional challenges were not before the Martinez court, and so there is no state-court judgment that could possibly bar this court's review on those claims. And even where Plaintiffs' constitutional challenges overlap with those brought in Martinez, this court is not bound by the SJC's conclusions on matters of federal law. As a result, Rooker-Feldman does not apply to Plaintiffs' constitutional challenges where they do not seek direct review of a state-court judgment.

E.  *The Colorado River Doctrine Does Not Apply*

Like the Rooker-Feldman doctrine, application of the Colorado River doctrine may warrant "dismissal of a federal suit due to the presence of a *concurrent state proceeding*." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 818 (1976) (emphasis added). But, as discussed, there is no concurrent state proceeding at issue here. As a result, the doctrine does not apply, and the court need not engage in the factor-balancing test the Defendants urge. See Commw. Mem. MTD 13-14 [Doc No. 110].

---

[6] For this reason, Brockton's argument that *res judicata* bars Plaintiffs' suit also fails. Brockton Mem. MTD. 16 [Doc. No. 116]. Plaintiffs have not yet had their opportunity to litigate any of these issues before any court.

F.  *Liability of the Municipal Police Defendants*

Police Departments, as municipal entities, "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Social Servs. of City of N.Y., 436 U.S. 658, 690 (1978). Additionally, municipalities may be sued for "deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 691.

The City of Brockton argues that Plaintiffs have failed to allege a Monell violation because the Police Departments are not responsible for enforcing or interpreting the State Act. Brockton Mem. MTD 11 [Doc. No. 116]; see Springfield Mem. MTD 9 [Doc. No. 119] (arguing the same, but in the context of whether the Police Department is a proper class representative). In response, Plaintiffs do not contend that the Police Departments are responsible for interpreting, enforcing, or defending the State Act: rather, they argue that whether the Police Departments were merely "following orders" is irrelevant to whether they are ultimately liable for the return of forfeited property. Pl's Oppo 42 [Doc. No. 126].[7]

The circuits are split on whether a municipal entity can be liable under Section 1983 for complying with the edicts of state law. Compare, e.g. Bethesda Lutheran Homes and Servs., Inc. v. Leean, 154 F.3d 716, 718 (7th Cir. 1998) with Evers v. Cty. of Custer, 745 F.2d 1196, 1203 (9th Cir. 1984). The First Circuit has not yet spoken to the issue. Other sessions in this district have adopted the test laid out by the Second Circuit, see Martin v. Evans, 241 F. Supp. 3d 276,

---

[7] To the extent Plaintiffs' claims against the Police Department Defendants begin and end with a claim for the return of forfeited assets, Plaintiffs concede that claim should be treated as one and the same as their claim seeking that relief against the Commonwealth.

284-85 (D. Mass. 2017), and this court likewise applies the Second Circuit's test here. Under that

test, the liability inquiry turns on "(1) whether the City had a meaningful choice as to whether it

would enforce [the statute in question]; and (2) if so, whether the City adopted a discrete policy

to enforce [the statute in question] that represented a conscious choice by a municipal

policymaker." Vives v. City of N.Y., 524 F.3d 346, 353 (2d Cir. 2008). Here, Plaintiffs have not

put forth any allegations about the Police Departments' "meaningful choice" under M.G.L. ch.

94C § 47. The language of the State Act indicates that the Departments do not enjoy such

discretion:

> All such moneys and proceeds received by any police department *shall be*
> deposited in a special law enforcement trust fund and *shall be* expended without
> further appropriation to defray the costs of protracted investigations, to provide
> additional technical equipment or expertise, to provide matching funds to obtain
> federal grants, or to accomplish such other law enforcement purposes as the chief
> of police of such city or town, or the colonel of state police deems appropriate, but
> such funds *shall not* be considered a source of revenue to meet the operating needs
> of such department.

 M.G.L. ch. 94C § 47(d) (emphases added).

That mandatory statutory language forecloses a Monell claim against the Police

Departments regarding the return of the Plaintiffs' civilly forfeited assets. As such, the Plaintiffs

have failed to state a claim for relief against the Police Department Defendants.

## IV.   Conclusion

For the foregoing reasons, the Commonwealth Defendants' Motion to Dismiss [Doc No.

109] is GRANTED in part and DENIED in part and the remaining Defendants' Motions to

Dismiss [Doc. Nos. 114, 115, 118, 120] are GRANTED.

IT IS SO ORDERED

November 13, 2023                                        /s/      Indira Talwani
                                                        United States District Judge

Add. 24

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                          SUPREME JUDICIAL COURT
                                      FOR SUFFOLK COUNTY
                                      No. SJ-2014-0005

                                      SUFFOLK SUPERIOR COURT
                                      NO.SUCR2005-10537;
                                      BOSTON MUNICIPAL COURT
                                      NO.0501-CR-0142;
                                      ESSEX SUPERIOR COURT
                                      NO.ESCR2007-1535


KEVIN BRIDGEMAN & others[1]

vs.

DISTRICT ATTORNEY FOR THE SUFFOLK DISTRICT & others[2]


DECLARATORY JUDGMENT


This matter came before the Court, Gaziano, J., on the respondent District Attorneys' letters filed on April 18, 2017.

Pursuant to Commonwealth v. Bridgeman, 476 Mass. 298, 327 (2017), which provides that of the three letters to be filed by each district attorney, "[t]he second letter shall identify all of the drug convictions on the list that the district attorney moves to vacate and dismiss with prejudice as a result of his or her individualized review[,]" it is **ORDERED** that the convictions of G.

---

[1] Yasir Creach and Miguel Cuevas; Committee for Public Counsel Services (CPCS), intervener.

[2] District Attorney for the Essex District, District Attorney for the Bristol District, District Attorney for the Cape and Islands District, District Attorney for the Middlesex District, District Attorney for the Norfolk District, and District Attorney for the Plymouth District.

L. c. 94C offenses that have been identified by the district attorneys in their respective second letters, as reproduced in Attachment A to this order, be and hereby are **VACATED AND DISMISSED WITH PREJUDICE,** and any outstanding warrants associated with those convictions are recalled.

It is **FURTHER ORDERED** that for good cause shown, Attachment A shall be **IMPOUNDED** until further order of this court.

By the Court,

Frank M. Gaziano
Associate Justice

Dated: 4·19·17

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
NO. 1984CV03373-C

STACY FOSTER, JAMIE KIMBALL, JONATHAN
RILEY, and NICOLE WESTCOTT, *on behalf of
themselves and all others similarly situated,*

Plaintiffs,

v.

COMMONWEALTH OF MASSACHUSETTS,

Defendant.

RECEIVED

ⁿCT 1 7 2022

MA Off. of Attorney General

Notice Sent
10/12/22
(3) DC

### [PROPOSED] FINAL APPROVAL ORDER

This matter came before the Court on Joint Motion for Final Approval of Class Action Settlement. The Court held a Fairness Hearing on October 6, 2022, after notice of the Fairness Hearing was given to the Class in accordance with this Court's Order Preliminarily Approving Class Action Settlement. Docket #18. The Court has carefully considered all filings submitted in connection with the Settlement Agreement and the Fairness Hearing, and hereby grants the Final Approval Motion ("Motion"). In connection with the Motion, the Court finds, orders, and adjudges as follows:

    1.    For purposes of this Order, the Court adopts all the defined terms that are used in the Settlement Agreement (Docket #16 at Ex. 2) and incorporates those terms by reference in this Order.

    2.    The Court grants final approval of the Settlement of this Action that is set forth in the Settlement Agreement and as set forth herein. The Court finds that the Settlement is fair, adequate, and reasonable to the certified Class and its members.

1

3.     The form and method of notifying Class Members of the terms and conditions of

the Settlement Agreement fully satisfied the requirements of Massachusetts Rule of Civil

Procedure 23 and due process; constituted the best notice practicable under the circumstances;

and constituted due and sufficient notice to all persons entitled thereto of the terms and

conditions of the Settlement Agreement and the right to object and appear at the Fairness

Hearing. The Notice program provided individual notice to all members of the Class who could

be identified through reasonable effort, and was supplemented by a Settlement Website,

telephone support line, and additional efforts to publicize the Settlement on the part of counsel

for the Parties.          fifteen

4.     There were ten objections to the Settlement from any of the Parties, any members

of the Class, or any other persons. After considering all submissions, the Court nevertheless

grants final approval of the Settlement as set forth herein.

5.     The Settlement Agreement is the product of arm's-length settlement negotiations

between the Parties and their counsel. The consideration provided by the Settlement is fair,

reasonable, and adequate in light of the claims asserted in the action and the costs, risks, and

delay of continued litigation. Further, the Settlement Agreement treats all Class Members

equitably, and provides for a fair and efficient method of distribution. Accordingly, the

Settlement Agreement is hereby fully and finally approved in all respects, and the Parties and the

Settlement Administrator are hereby directed to effectuate its terms.

6.     The Court approves the parties' recommendation that the total amount remaining

in the Refund Account as a resulted of undelivered or uncashed checks be paid to Community

Legal Aid (CLA), the Transformational Prison Project (TPP) and the Tufts University Prison

Initiative at Tisch College (TUPIT)'s Tufts Education and Re-entry Network program

2

(MyTERN), on the express conditions set forth in the parties' agreements with CLA, TPP, and MyTERN filed in support of the Joint Motion for Final Approval.

7.     The Court hereby approves of service awards to be paid to Class Representatives Foster ("Foster"), Jamie Kimball ("Kimball"), Jonathan Riley ("Riley") and Nicole Westcott ("Westcott") for their efforts in bringing this case and obtaining the Settlement. The Court has concluded that: (a) such payments are appropriate to encourage class members to undertake the responsibility of representative lawsuits; (b) Foster, Kimball, Riley, and Westcott undertook reputational risk in bringing the action; (c) Foster, Kimball, Riley, and Westcott worked closely with Class Counsel throughout the litigation from providing information about their criminal cases that featured prominently in the Complaint to publicizing the settlement after the parties reached an agreement; (d) the amount of the service awards requested is commensurate with awards in comparable class action cases. For these reasons, the Court hereby approves and awards service payments to Foster, Kimball, Riley, and Westcott in amount of $10,000.00, to be separately paid by the Commonwealth in addition to the Class Recovery.

8.     The Court hereby awards attorneys' fees to compensate Class Counsel for their time incurred. The Court has concluded that: (a) Class Counsel achieved a favorable result for the Class by obtaining the Commonwealth's agreement to institute a streamlined process for returning fines, fees, and restitution paid by Class Members as a result of vacated convictions; (b) Class Counsel devoted substantial effort to pre-and post-filing investigation, legal analysis, and litigation; (c) Class Counsel prosecuted the Class's claims on a contingent-fee basis, investing significant time and accumulating costs with no guarantee that they would receive compensation for their services or recover their expenses; (d) Class Counsel employed their knowledge and experience in achieving a valuable settlement for the Class; (e) the Class

3

Representatives have reviewed the Agreement and been informed of Class Counsel's attorney fee application and have approved; and (f) the Class Notice informed Settlement Class Members of Class Counsel's fee under the Agreement. For these reasons, the Court hereby approves Class Counsel's Fee Application and awards to Class Counsel fees in the total amount of $1,408,543.13, to be separately paid by the Commonwealth in addition to the Class Recovery.

9.    The Court hereby dismisses with prejudice all of the Plaintiffs' Released Claims in the Action, as defined in Paragraph 2.34 of the Settlement Agreement, whether asserted by the Named Plaintiffs on their own behalf, on behalf of the Class, without costs to any of the Parties except as provided for in the Settlement Agreement and approved by the Court.

10.    Upon the Settlement Effective Date, the Named Plaintiffs and every Class Member (on behalf of themselves, their heirs, executors, administrators, successors, and assigns) shall unconditionally, finally, and forever release, relinquish and discharge the Released Parties from the Plaintiffs' Released Claims as provided for in the Settlement Agreement. Further, the Named Plaintiffs and each Class Member, and their respective heirs, executors, administrators, successors, and assigns, are hereby permanently barred and enjoined from asserting any of the Plaintiffs' Released Claims against any of the Released Parties pursuant to the terms of the Settlement Agreement.

11.    Within 45 days of the Effective Date of this Final Approval Order, Plaintiffs shall file an amended complaint in *Foster et al. v. Commonwealth et al.*, No. 1:18-cv-10354-IT, in the United States District Court for the District of Massachusetts, voluntarily dismissing with prejudice all claims for relief, except any claims that relate to forfeitures of money or property from Class Members.

4

12.     Neither this Order nor the Settlement Agreement shall constitute an admission by the Commonwealth or any Released Party of any liability or wrongdoing.

13.     The Court retains continuing and exclusive jurisdiction over the Parties and all Class Members to administer, construe, and enforce the Settlement Agreement in accordance with its terms for the mutual benefit of the Parties, without affecting the finality of this Final Approval Order or Final Judgment in this action.

IT IS HEREBY ORDERED.

Dated: _October 6_, 2022

_____
Justice of the Superior Court

5

# #34

**BRISTOL, ss.**

**Docket No. 0673CR00937**

**COMMONWEALTH**

**v.**

**CHANTHA CHHOT**

BRISTOL, SS SUPERIOR COURT
FILED

AUG - 7 2020

MARC J SANTOS, ESQ.
CLERK/MAGISTRATE

## ORDER ON DEFENDANT'S
## MOTION FOR REFUND OF FEES AND FORFEITED FUNDS

On March 21, 2007, the defendant, Chantha Chhot, pled guilty to so much of two

indictments as charged: (1) unlawful possession of a Class B controlled substance with intent to

distribute, G.L. c. 94C, § 32A (a); and (2) unlawful possession of a Class A controlled substance,

G.L. c. 94C, § 34. The court (McLaughlin, J.) sentenced the defendant to two and a half years in

the house of correction on the first indictment and, on the second indictment, one year in the

house of correction suspended for two years from and after the sentence on the first indictment.

At the same time, the court allowed the Commonwealth's motion to forfeit $ 2,878.00 pursuant

to G.L. c. 94C, § 47 (d). The court also assessed a DNA fee; a victim witness fee; a drug

analysis fee; and a probation fee.

On June 26, 2017, the defendant's motion for new trial was allowed by agreement due to

the misconduct of State chemist Annie Dookhan. On July 7, 2017, the court allowed the parties'

joint motion to dismiss the charges.

The defendant has now filed a motion for a refund for fees he paid as a result of his

conviction, including a fee of $ 500.00 to reinstate his Massachusetts driver's license. He also

seeks a refund of the money the court ordered forfeited. The court held a hearing on the motion.

"Under the [Supreme] Court's holding in [*Nelson v. Colorado*, ___ U.S. ___, ___, 137 S.Ct. 1249, 1252 (2017)] the State is obligated under the due process clause of the Fourteenth Amendment to refund monies where three elements are satisfied: (1) the monies were 'exacted from the defendant' upon conviction and as a consequence of the conviction; (2) the amounts 'exacted' were actually paid by the defendant; and (3) the conviction has been 'invalidated by a reviewing court and no retrial will occur.'" *Commonwealth v. Martinez*, 480 Mass. 777, 784-785 (2018).

The Supreme Judicial Court has established the following procedure for refunds. "First, a defendant seeking a refund must file a motion for refund in the court where he or she was convicted and mail to or otherwise serve this motion on the office that prosecuted the conviction, that is, the office of the Attorney General or the district attorney's office. The motion may be filed by the defendant or by defense counsel. If the defendant is filing the motion pro se but was represented by an attorney in the underlying criminal case, a copy of the motion should be sent to the defense attorney. The defendant must swear or attest that the information provided in support of the motion is true, based on personal knowledge or information and belief. This may be accomplished by submitting a verified motion, that is, a motion where the information contained within is sworn or attested, or by submitting with the motion an affidavit in the form of a sworn or attested statement, letter, or application. This verified motion or accompanying affidavit must clearly state (1) that the defendant's conviction is no longer valid and is not subject to retrial; (2) that the requested refund consists of fines, fees, costs, or restitution assessed solely as a result of the invalidated conviction; (3) the amount of the requested refund; and (4) that the defendant has paid the requested amount." *Id.* at 793-794 (footnote omitted) (establishing minimal procedure under art. 12 of Declaration of Rights that also comports with Fourteenth Amendment).

2

***DNA Fee.*** The appellate courts have not specifically addressed whether a DNA. fee is subject to refund. However, it is clearly the type of fee that falls within the principles the courts have enunciated. "The overriding principle is that where a defendant has been ordered to make a payment because of a conviction, the invalidation of that conviction erases the State's claim to that payment, and any amount paid must be restored to the defendant as a matter of due process." *Id.* at 785. The court imposed the fee as required by statute, G.L. c. 22E, § 3, solely because the defendant was convicted of the offenses charged in this case. However, the court's records show that the defendant never paid the DNA fee.

***Victim Witness Fee.*** The Supreme Judicial Court has specifically held that the victim witness fee is subject to refund in these circumstances. "[W]here a defendant is sentenced on a single conviction, the victim-witness assessment ordered under G. L. c. 258B, § 8, is exacted from the defendant solely as a consequence of that conviction. Any amount paid must therefore be returned where the conviction is invalidated and it is determined that the case will not or cannot be retried." *Commonwealth v. Martinez,* 480 Mass. 777, 786 (2018). The court's records show that the defendant paid a victim witness fee of $ 90.00. The Commonwealth must therefore refund that amount.

***Drug Analysis Fee.*** While the appellate courts have not specifically addressed the drug analysis fee imposed under G.L. c. 280, § 6B, this fee falls under the "overriding principle" that fees that a defendant is required to pay as a result of a conviction must be refunded. The court's records show that the defendant paid a criminal assessment fee of $ 150.00 as a result of his conviction. The Commonwealth must refund that amount.

***Probation Fees.*** The Supreme Judicial Court has held that probation fees imposed and paid as a result of a single conviction that was vacated must be refunded. "Where a judge

3

Add. 34

sentences a defendant to probation on a single conviction, monthly probation fees ordered under

G. L. c. 276, § 87A, are paid by the defendant as a direct consequence of that conviction.

Therefore, any amount paid by the defendant is 'taken from [him or] her solely on the basis of a

conviction,' ... and must be returned in full once the conviction is invalidated and it is

determined that the case will not or cannot be retried." *Martinez, supra* at 785. However, the

court's records show that the defendant never paid any probation fees.

*Motor Vehicle License Reinstatement Fee.* The defendant also seeks a refund of

$ 500.00 he claims to have paid to reinstate his motor vehicle operator's license, which was

suspended as a result of his conviction.

At the time of the defendant's conviction, the registrar of motor vehicles was required to

suspend the operator's license of a defendant for drug convictions under G.L. c. 94C. See G.L.

c. 90, § 22 (f), as amended through St. 1989, c. 241. That may well have occurred here.

However, the defendant has not submitted an affidavit with any documentation from the Registry

of Motor Vehicles showing that his license was suspended solely because of his conviction or

that he was required to pay, and did pay, $ 500.00 to reinstate the license. Accordingly, the

evidence before the court is insufficient to warrant a refund of the reinstatement fee.

*Forfeited Funds.* The defendant also seeks a refund of the $ 2,878.00 the court ordered

forfeited at the time of his guilty plea. "[F]orfeiture, even where ordered at a plea hearing, 'is

outside the scope of the criminal matter and constitutes a civil proceeding.' ... [A motion]

under [G.L. c. 94C,] § 47 (b), as a matter of law, initiate[s] a separate civil proceeding that [is]

adjudicated at the same time as the criminal proceeding. ... The finding of probable cause of

nexus that sufficed to order forfeiture in the civil proceeding did not depend on the finding in the

criminal proceeding of sufficient evidence to warrant a finding of guilt on the plea. ... The

4

forfeiture judgment therefore [is] not solely a consequence of the invalidated drug convictions, and need not be vacated because of their invalidation. To be sure, the reasons for invalidating a conviction potentially may warrant relief from the civil judgment of forfeiture, but that issue must be separately litigated in the civil forfeiture proceeding through a motion for relief from judgment under Mass. R. Civ. P. 60 (b). A defendant is not entitled to such relief solely because the criminal convictions that were related to the forfeiture were invalidated." *Commonwealth v. Martinez*, 480 Mass. 777, 790-792 (2018).

"To comport with due process, a State may not impose anything more than minimal procedures on the refund of exactions dependent upon a conviction subsequently invalidated." *Nelson, supra* at 1258. The court will therefore construe the defendant's motion for a refund as a motion for relief from judgment under Mass. R. Civ. P. 60 (b).

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;...." Mass. R. Civ. P. 60 (b). The Supreme Judicial Court has held that Annie Dookhan engaged in misconduct attributable to the Commonwealth. *Commonwealth v. Scott*, 467 Mass. 336, 353 (2014). However, under rule 60 (b), a motion to vacate a judgment for misconduct must be brought "within a reasonable time... not more than one year after the judgment, order or proceeding was entered or taken." The court ordered forfeiture on the same day as the defendant's guilty plea, March 21, 2007. The defendant did not file his motion for a refund until March 10, 2020. Thus, the motion is time-barred under rule 60 (b) (3).

Relief is nevertheless available to the defendant under rule 60 (b) (6), which requires only that a party bring a motion within a "reasonable time" but not within a maximum of one year.

5

Subsection six authorizes the court to vacate a judgment "for any other reason justifying relief from the operation of the judgment." Although relief under subsection six is ordinarily not available where the misconduct falls under subsection three, relief under subsection six is available where the misconduct involves "something more" than misconduct. *Owens v. Mukendi,* 448 Mass. 66 (2006). The Supreme Judicial Court has characterized Dookhan's acts as "egregious government misconduct." *Scott, supra.*

The charges against the defendant were dismissed by agreement in 2017. The Supreme Judicial Court established a procedure allowing defendants to obtain a refund of fees in 2018. The defendant filed his motion for a refund on March 10, 2020. That is not an unreasonable delay. The Commonwealth must therefore refund the $ 2,878.00 taken from the defendant.

The court accordingly **ORDERS** the Commonwealth to refund the sum of $ 3,118.00 that the defendant paid to the Commonwealth as a result of having been convicted of the charges in this case, since those charges were subsequently dismissed.

August 7, 2020

Thomas F. McGuire, Jr.
Justice of the Superior Court