# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————————————————

No. 23-2069

———————————————————————

JENNIFER COTTO, on behalf of herself and all others similarly situated; JAMIE KIMBALL, on behalf of herself and all others similarly situated; DAVID CUMMINGS, on behalf of himself and all others similarly situated; TODD MOTON, on behalf of himself and all others similarly situated; and TRAVIS MORAN, on behalf of himself and all others similarly situated,
*Plaintiffs-Appellees*,

STACY FOSTER, on behalf of himself and all others similarly situated; JONATHAN RILEY, on behalf of himself and all others similarly situated; and NICOLE WESTCOTT, on behalf of herself and all others similarly situated,
*Plaintiffs*,

v.

ANDREA J. CAMPBELL, Attorney General; TIMOTHY SHUGRUE, Berkshire County District Attorney; THOMAS M. QUINN, III, Bristol County District Attorney; ROBERT J. GALIBOIS, II, Cape and Islands District Attorney; PAUL TUCKER, Essex County District Attorney; ANTHONY GULLUNI, Hampden County District Attorney; MARIAN RYAN, Middlesex County District Attorney; MICHAEL W. MORRISSEY, Norfolk County District Attorney; DAVID E. SULLIVAN, Northwestern District Attorney; TIMOTHY J. CRUZ, Plymouth County District Attorney; KEVIN R. HAYDEN, Suffolk County District Attorney; JOSEPH D. EARLY, JR., Worcester County District Attorney; THOMAS G. AMBROSINO, Administrator of the Trial Court; JOHN MAWN, JR., Massachusetts State Police Interim Superintendent,
*Defendants-Appellants*,

COMMONWEALTH OF MASSACHUSETTS; BROCKTON POLICE
DEPARTMENT, on behalf of itself and all other police departments
similarly situated; FALL RIVER POLICE DEPARTMENT, on behalf of
itself and all other police departments similarly situated; BOSTON
POLICE DEPARTMENT, on behalf of itself and all other police
departments similarly situated; SPRINGFIELD POLICE
DEPARTMENT, on behalf of itself and all other police departments
similarly situated; CHARLIE BAKER, Governor; DEBORAH B.
GOLDBERG, Treasurer; EDWARD DOLAN, Commissioner of
Probation; DANIEL BENNETT, Secretary of Executive Office of Public
Safety and Security,
*Defendants.*

---

**BRIEF FOR PLAINTIFFS-APPELLEES**

---

Daniel N. Marx (#1150876)
William W. Fick (#82686)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*dmarx@fickmarx.com*
*wfick@fickmarx.com*

Luke Ryan (#1158006)
STREHORN, RYAN & HOOSE
100 Main Street, 3d Floor
Northampton, MA 01060
(413) 586-4800
*lryan@strhlaw.com*

September 6, 2024

# TABLE OF CONTENTS

Table of Authorities ................................................................................. iii

Introduction ........................................................................................... 1

Background ............................................................................................. 5

Summary of Argument ........................................................................ 11

Argument .............................................................................................. 15

I.   Plaintiffs adequately allege continuing violations of their federal constitutional rights. ...................................................................... 15

II.  Consistent with the *Ex parte Young* exception to the Eleventh Amendment, the District Court can award prospective declaratory and injunctive relief to remedy Defendants' alleged continuing violations of Plaintiffs' federal constitutional rights. .................... 26

   A.   The District Court can declare that the continued withholding of money and property forfeited from Class Members in connection with their vacated, wrongful convictions violates the Fourteenth Amendment's guarantee of due process and the Eighth Amendment's prohibition on excessive fines. .... 26

   B.   The District Court can also order Defendants to comply with federal law, including by providing a fair, efficient, and effective means for Class Members to seek the return of their forfeited property, notifying Class Members of their rights, and requiring Defendants to conduct an accounting of all forfeited property that continues to be unlawfully withheld from Class Members. ........................................................... 29

      1.   The District Court can order Defendants to implement enhanced due process protections for Class Members who request the return of their forfeited money and property in state court. ............................................... 30

2.     The District Court can order Defendants to notify Class Members of their rights to seek the return of their forfeited money and property. .....................................39

3.     The District Court can order Defendants to conduct an accounting of all forfeited property that continues to be unlawfully withheld in violation of federal law. .........46

Conclusion ..............................................................................51

Certificate of Compliance .........................................................53

Certificate of Service ...............................................................54

# TABLE OF AUTHORITIES

## Cases

*Alden v. Maine,*
    527 U.S. 706 (1999) ....................................................... 26

*Anderson v. Cryovac, Inc.,*
    805 F.2d 1 (1st Cir. 1986) .............................................. 49

*Bridgeman v. District Attorney for the Suffolk District,*
    471 Mass. 465, 30 N.E.3d 806 (2015) ........................... 50

*Chelentis v. Luckenbach Steamship Co.,*
    247 U.S. 372 (1918) ....................................................... 21

*Committee for Public Counsel Services v. Attorney General,*
    480 Mass. 700, 108 N.E.3d 966 (2018) ........................... 50

*Commonwealth v. Cotto,*
    471 Mass. 97, 27 N.E.3d 1213 (2015) ........................... 50

*Commonwealth v. Martinez,*
    480 Mass. 777, 109 N.E.3d 459 (2018) ......................... 30

*Commonwealth v. Scott,*
    467 Mass. 352, 5 N.E.3d 530 (2014) ............................. 50

*Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo,*
    551 F.3d 10 (1st Cir. 2008) ........................................... 26

*Deposit Insurance Agency v. Superintendent of Banks,*
    482 F.3d 612 (2d Cir. 2007) ..................................... 19, 36

*Doe v. Shibinette,*
    16 F.4th 894 (1st Cir. 2021) .............................. 20, 21, 34

iii

*Doucette v. Ives,*
    947 F.2d 21 (1st Cir. 1991) ...................................................... 40, 44

*Edelman v. Jordan,*
    415 U.S. 651 (1974) ........................................................ 26, 40, 41

*Ex parte Young,*
    209 U.S. 123 (1908) ............................................................ *passim*

*Ferrara v. United States,*
    456 F.3d 278 (1st Cir. 2006) ........................................................ 51

*Green v. Mansour,*
    474 U.S. 64 (1985) ..................................................... 27, 36, 40, 44

*Greenless v. Almond,*
    277 F.3d 601 (1st Cir. 2002) ........................................................ 26

*Holt Civic Club v. Tuscaloosa,*
    439 U.S. 60 (1978) .................................................................. 33

*Idaho v. Coeur d'Alene Tribe of Idaho,*
    521 U.S. 261 (1997) .............................................................. 19, 35

*Jones v. Willie,*
    2016 U.S. App. LEXIS 23617 (6th Cir. Jan. 28, 2016) .................. 33

*Kapps v. Wing,*
    404 F.3d 105 (2d Cir. 2005) ..................................................... 47, 48

*Libretti v. United States,*
    516 U.S. 29 (1995) .................................................................. 50

*Lyons v. Powell,*
    838 F.2d 28 (1st Cir. 1988) ......................................................... 33

*Manning v. S.C. Department of Highway & Public Transportation,*
    914 F.2d 44 (4th Cir. 1990) ........................................................ 27

*Marbury v. Madison,*
    5 U.S. (1 Cranch) 137 (1803) ......................................22

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ...................................... 15, 22, 48

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,*
    894 F.2d 1482 (5th Cir. 1990) ......................................49

*Mills v. Maine,*
    118 F.3d 37 (1st Cir. 1997)......................................27, 45

*Nelson v. Colorado,*
    581 U.S. 128 (2017) ...................................... *passim*

*Pennhurst State School & Hospital v. Halderman,*
    465 U.S. 89 (1984) .............................................. 4, 37, 38

*Quern v. Jordan,*
    440 U.S. 332 (1979) .............................................. *passim*

*Rosie D. v. Swift,*
    310 F.3d 230 (1st Cir. 2002)......................................36, 39

*Seminole Tribe v. Florida,*
    517 U.S. 44 (1997) ......................................35

*Taylor v. Westly,*
    402 F.3d 924 (9th Cir. 2005) ......................................46

*Timbs v. Indiana,*
    586 U.S. 146 (2019) .............................................. 15, 22

*United States v. Zannino,*
    895 F.2d 1 (1st Cir. 1980)..............................................47

*Vallejo v. Amgen, Inc.,*
    903 F.3d 733 (8th Cir. 2018) ......................................49

*Venetie I.R.A. Council v. Alaska,*
944 F.2d 548 (9th Cir. 1990) .......................................................... 27

*Verizon Maryland, Inc. v. Public Services Commission of Maryland,*
535 U.S. 635 (2002) ............................................................... 19, 26

*Virginia Office for Protection & Advocacy v. Stewart,*
563 U.S. 247 (2011) ............................................................... 37, 39

### Constitutional Provisions, Statutes, and Rules

U.S. Constitution, 8th amendment ................................................. *passim*

U.S. Constitution, 11th amendment ............................................... *passim*

U.S. Constitution, 14th amendment ............................................... *passim*

Fed. R. Civ. P. 12(b)(1) ...................................................... 10, 46

Fed. R. Civ. P. 26 ................................................................ 48

Fed. R. Civ. P. 54(c) ............................................................ 33

Mass. R. Civ. P. 60(b) ..................................................... 4, 14, 30

M.G.L. c. 94C, § 47 .............................................................. 6

### Other Authorities

BLACK'S LAW DICTIONARY ......................................................... 22

BLACKSTONE'S COMMENTARIES ...................................................... 22

BOUVIER'S LAW DICTIONARY ....................................................... 22

**INTRODUCTION**

Plaintiffs—and the thousands of Class Members whom they seek to represent—were wrongfully convicted of drug offenses in Massachusetts courts based on evidence that was tainted by former state chemists, Annie Dookhan and Sonja Farak. After the outrageous government misconduct in the state drug labs came to light, the Supreme Judicial Court ("SJC") vacated those wrongful convictions in the largest mass dismissal in U.S. legal history.

When Plaintiffs' convictions were vacated, their presumption of innocence was fully restored. At that point, the Commonwealth had "zero claim of right" to the fees and fines that Plaintiffs had paid, or to the money and property that they had forfeited, in connection with their wrongful convictions. *See Nelson v. Colorado*, 581 U.S. 128, 135 (2017) (holding due process prohibits "the continuing deprivation of property, after a conviction has been reversed or vacated, with no prospect of reprosecution").

Defendants, all District Attorneys and other state officials, concede that basic principle, but only in part. They agree that Plaintiffs are entitled to the return of specific exactions, such as victim-witness fees

1

and probation-supervision fees, but draw the line at forfeited money and property. According to Defendants, forfeiture is the result a separate civil proceeding, and therefore, vacatur of a related criminal conviction makes no difference, even when there is no civil proceeding, and money and property is taken based on a motion in the criminal case, as part of the judgment in the criminal case, or as a condition of probation imposed on the defendant.

In other words, Defendants insist that, notwithstanding the unprecedented government malfeasance that caused the drug lab scandals in Massachusetts and led to the dismissal with prejudice of tens of thousands of wrongful convictions, they can nevertheless keep millions of dollars in cash and property (cars, cellphones, etc.) that were taken from the innocent victims of those scandals—in many cases, literally from their pockets—and continue to be unlawfully withheld today.

The Second Amended Complaint ("SAC") alleges that the *continued withholding* of money and property that was forfeited from Plaintiffs in connection with their vacated, wrongful convictions violates both the Fourteenth Amendment's guarantee of due process (because absent reliable drug evidence, there is no probable cause for forfeiture) and the

Eighth Amendment's prohibition on excessive punishment (because punitive fines may not be imposed on people who are presumed innocent). To remedy those continuing violations, Plaintiffs request various forms of prospective declaratory and injunctive relief.

Pursuant to the *Ex parte Young* doctrine, the District Court has the authority to order Defendants, all state officials, to comply with federal law. Although the federal court cannot order Defendants to pay retrospective monetary compensation to Plaintiffs, it can exercise its broad discretion to provide a wide range of prospective equitable relief.

For example, consistent with the Eleventh Amendment, the District Court could order Defendants to implement a fair, efficient, and effective process for Class Members to seek the return of their forfeited property, through state court proceedings that would provide adequate due process protections (*i.e.*, proceedings in which Defendants would have to establish probable cause based on untainted evidence to justify the continued withholding of forfeited property and Class Members would not have to disprove any connection to alleged drug activity). It could also order Defendants to account for all the money and property that was forfeited from Class Members in connection with their vacated,

wrongful convictions, and to notify Class Members of their rights to seek the return of their property, for example by filing motions under Mass. R. Civ. P. 60(b) in state court.

Defendants contend, however, that the District Court is powerless to remedy the alleged ongoing violations of federal law. They argue, incorrectly, that because the Eleventh Amendment bars one specific form of relief (*i.e.*, monetary compensation), the federal court cannot provide any relief. They assert that anything else, such as an accounting of forfeited property or a notice of rights to seek its return, would not be "ancillary" to any available injunctive relief. That erroneous argument mischaracterizes Plaintiffs' pleading (and, specifically, their request for relief), misconstrues the District Court's decision, and misreads the case law interpreting the *Ex parte Young* exception "as necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984) (quoting *Ex parte Young*, 209 U.S. 123, 160 (1908)).

At this early stage, given Plaintiffs' well-pleaded allegations and the District Court's well-established authority, this civil rights litigation

should proceed. It remains to be seen whether Defendants will be found liable for their alleged continuing violations of Plaintiffs' federal constitutional rights and, if so, what class-wide relief the District Court might order to remedy those violations. In the end, if Defendants believe that the District Court has gone too far, they will have an opportunity to seek review by this Court of any final order.

Plaintiffs do not dispute the Eleventh Amendment draws a line to limit federal judicial power. But in this case, the District Court has not yet come close to that line—and may never cross it. Indeed, to date, the District Court has proceeded with commendable caution. Thus, as an interlocutory matter, Defendants cannot preemptively escape all legal responsibility for their continued abuse of the innocent victims of the drug lab scandals.

## BACKGROUND

As set forth in their Second Amended Complaint[1], Plaintiffs Jennifer Cotto, David Cummings, Jamie Kimball, Todd Moton, and

---

[1] In their initial Complaint, Plaintiff Jamie Kimball and several other "Dookhan Defendants," who have since been terminated from this action, sought refunds of certain fees and fines that they paid in connection with their vacated, wrongful convictions, such as victim-witness fees, DNA-testing fees, and probation-supervision fees. D.C. Dkt.

Travis Moran, along with thousands of Class Members whom they seek to represent, were all charged with state drug offenses in Massachusetts courts and had money and/or property seized by the police at the time of their arrests. R.A. 69-73, ¶¶ 19-23. In each case, the seized money and property was forfeited, purportedly pursuant to M.G.L. c. 94C, § 47 ("the State Act"), which permits the prosecution to seek forfeiture by filing (i) a motion in the criminal case under § 47(b), or (ii) a petition in a related civil *in rem* case in Superior Court under § 47(d). R.A. 81, ¶ 48.

The alleged illegal drugs that led to Plaintiffs' criminal charges and the related forfeitures of their money and property were entrusted to Dookhan and Farak, who engaged in egregious misconduct that

---

1 (complaint). They later filed a First Amended Complaint, which added Plaintiff Nicole Westcott, a "Farak Defendant" and sought similar class relief. D.C. Dkt. 27. From the outset in this class action, the Commonwealth conceded that, under *Nelson v. Colorado*, 581 U.S. 128 (2017), due process required refunds of certain "case-related payments" to class members. D.C. Dkt. 38 (joint motion to stay). Thus, before Defendants filed their Answer, the District Court stayed this matter in federal court so that the parties could settle the non-forfeiture claims in state court. D.C. Dkt. 39 (order staying action). After extensive negotiations and a fairness hearing, the state court issued a final approval order for a class settlement which has resulted in refunds of more than $13M. R.A. 211-15. At that point, the District Court lifted the stay, and the parties returned to federal court to litigate the forfeiture claims. D.C. Dkt. 77 (order lifting stay), Plaintiffs filed their Second Amended Complaint to focus on those remaining claims. R.A. 64.

compromised the integrity of critical evidence and rendered it completely unreliable. R.A. 89-90, ¶¶ 90-99. If their misconduct had been disclosed at that time, it would have been impossible for the Commonwealth to prove, or a state court to find, the requisite nexus between any alleged drug offenses and Plaintiffs' money and property. As it stands, due to Dookhan and Farak's misconduct, no reliable evidence establishes probable cause that Plaintiffs ever possessed controlled substances. R.A. 66-67, ¶ 9; R.A. 90, ¶ 100.

Before the public revelation of the extensive misconduct in the drug labs, many Class Members entered into plea agreements in which they agreed not to contest forfeiture motions in their criminal cases or separate civil actions to forfeit their money or property. R.A. 86, ¶ 67. That was the case for Plaintiffs Cotto, Moton, and Moran, who assented to forfeitures as part of plea bargains to resolve their criminal cases. Many other Class Members forfeited their money and property as part of sentences imposed in their criminal cases, even when the prosecution never filed forfeiture motions in those cases or forfeiture petitions in related civil cases. R.A. 86, ¶ 72. That is what happened to Plaintiff Cummings, who was ordered as a special condition of probation in his

criminal case to relinquish any claim to almost $15,000 that the police had seized from him. R.A. 70-71, ¶ 20.

After the falsification of evidence and other shocking misconduct in the drug labs came to light, the SJC vacated the wrongful convictions against Plaintiffs and thousands of similarly situated individuals. R.A. 90-91, ¶¶ 101-06. Although these exonerated individuals were once again presumed innocent of any illegal drug activity, none of the money or property that had been taken from them in connection with their convictions was returned. R.A. 69-73, ¶¶ 19-23; R.A. 96-97, ¶¶ 128-31; R.A. 98, ¶¶ 136-37.

Rather, in violation of federal law, Defendants—the District Attorneys, the Trial Court Administrator, and the Massachusetts State Police Superintendent—have effectuated, maintained, and enforced the continued unlawful withholding of forfeited money and property from Plaintiffs and the Class Members whom they seek to represent. R.A. 73-80, ¶¶ 24-41. These current policies are predicated, at least in part, on an impermissible financial incentive or "profit motive" that has led Defendants to consistently oppose reforms designed to curb abuses under

the State Act, one of the nation's most draconian forfeiture laws. R.A. 82, ¶¶ 52-53; R.A. 83-84, ¶¶ 56-62; R.A. 94-96, ¶¶ 118-27, R.A. 104, ¶ 165.

In short, Defendants have failed to provide a fair, efficient, and effective process for Plaintiffs to seek the prompt return of their forfeited money and property in state court. R.A. 96-97, ¶¶ 129-31. Instead, and despite the undisputed fact that government misconduct rendered the supposed drug evidence entirely unreliable, Defendants erroneously and unfairly insist that, to get back their money and property, Plaintiffs must bear the burden to disprove any nexus to drug activity. R.A. 82-84, ¶¶ 54-62; R.A. 94-96, ¶¶ 118-27.

In their Second Amended Complaint, Plaintiffs seek a declaration that the continued withholding by Defendants of money and property for which no reliable evidence establishes probable cause to justify forfeiture violates both the Fourteenth Amendment's guarantee of due process and the Eighth Amendment's prohibition on excessive fines. R.A. 101, 106-07, ¶¶ 152-53, 179. Further, Plaintiffs seek prospective, injunctive relief in various forms, including the implementation of a fair, efficient, and effective process for requesting the return of forfeited property, notice of

their rights, and an accounting of the money and property that Defendants continue to withhold. R.A. 106-07, ¶¶ 179-81.

Defendants moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), arguing the Eleventh Amendment bars this federal civil-rights suit because, according to Defendants, Plaintiffs improperly seek retrospective monetary compensation. R.A. 108. The parties fully briefed the issue, R.A. 114 (Defs.' Mem.), R.A. 137 (Pls.' Opp.), R.A. 191 (Defs.' Reply), and the District Court heard lengthy argument, R.A. 240 (Nov. 2, 2023 Hr'g Tr.). Ultimately, the District Court granted in part and denied in part Defendants' motion. R.A. 216.

The District Court ruled that it could not order "the direct repayment" by Defendants (or the Commonwealth itself) of "forfeited assets." R.A. 230. Nevertheless, the District Court ruled that, if Plaintiffs proved the alleged continuing violations of federal law, it might provide other equitable relief, including enhanced protections in state proceedings to protect due process, a notice of rights to request the return of forfeited money and property in state court, and an accounting of that property. R.A. 232-33 (characterizing "portions of Plaintiffs' requested relief" as "classic examples of prospective injunctive relief"); *see also* R.A.

270 (distinguishing between ordering Defendants to "change some procedures" and "having them write . . . a check"). In reaching that result, the District Court rejected the sweeping claim by Defendants that the *Ex parte Young* doctrine does not apply in this case and, thus, that it cannot provide *any equitable remedy* for the ongoing violations of Plaintiffs' federal constitutional rights.

After the District Court adopted the parties' joint proposed scheduling order for discovery and motion practice, D.C. Dkt. 133, 133-1, and 134, Defendants noticed this interlocutory appeal. R.A. 16.[2]

## SUMMARY OF ARGUMENT

In their appeal from the District Court's order denying in part their motion to dismiss on the grounds of sovereign immunity, Defendants make several related arguments, all flowing from Defendants' misreading of Plaintiffs' Second Amended Complaint and the District Court's decision below.

---

[2] Although Plaintiffs filed a notice of cross-appeal from the District Court's decision to the extent that it allowed in part Defendants' motion to dismiss, R.A. 20, they no longer seek interlocutory review but reserve their rights to appeal following the entry of a final judgment.

First, Defendants argue that Plaintiffs do not allege any continuing violation of their federal constitutional rights. In fact, the Second Amended Complaint expressly and repeatedly alleges ongoing violations of the Fourteenth Amendment's guarantee of due process and the Eighth Amendment's prohibition on excessive fines. The District Court ruled that, consistent with the Eleventh Amendment, it could award various forms of prospective injunctive relief to remedy those alleged violations of federal law.

Second, Defendants argue that, because there are no continuing violations of federal law (only past violations), the District Court cannot award any prospective injunctive relief. But as noted above, and as the District Court recognized, Plaintiffs allege the continued withholding of money and property forfeited in connection with their vacated, wrongful convictions and without any reliable evidence to establish probable cause for those forfeiture, violates their federal constitutional rights. The *Ex parte Young* doctrine authorizes the District Court to order Defendants, all state officials who have been sued in their official capacities, to comply with federal law.

Third, and relatedly, Defendants argue that, because no other prospective injunctive relief is available, the District Court cannot order notice to Class Members or an accounting of their forfeited money and property. Again, that gambit stumbles out of the gate. Because the District Court can award prospective declaratory and injunctive relief, if it finds Defendants are liable for continuing violations of Plaintiffs' rights, it can also, as an "ancillary" matter, order notice and an accounting, both classic forms of prospective equitable relief that the Eleventh Amendment permits. There is no evidence in the record, and Defendants presented no evidence below, to support their bald assertion that an accounting (or notice, for that matter) would be unduly burdensome. This civil rights litigation results from outrageous government misconduct in the state drug labs, and Defendants should not be relieved of their basic obligations to comply with federal law, because they claim not even to know what, or how much, they took from the innocent victims of the lab scandals.

Finally, regarding potential declaratory relief, Defendants argue that, because there are no continuing violations of federal law, there is nothing for the District Court to declare. That argument echoes the

erroneous claim that no injunctive relief is available, and it fails for the same reason. Defendants also try to mischaracterize declaratory relief as an "end run" around the Eleventh Amendment. But as the District Court found, such relief would have no res judicata effect on any state proceedings. In this case, an order that Defendants (1) provide a fair, efficient, and effective process for Class Members to seek refunds of their forfeited money and property, (2) notify Class Members of their rights, and (3) conduct an accounting of all wrongfully withheld money and property would not effectively amount to, or necessarily lead to, any payments of money from the Commonwealth to Class Members. It would still be up to Class Members to file motions under Mass. R. Civ. P. 60(b), Defendants to respond to those motions, and state courts to rule on them, before any money or property might be returned. Beyond ensuring that those state proceedings comply with federal law, the federal court would play no role in them.

## ARGUMENT

## I. Plaintiffs adequately allege continuing violations of their federal constitutional rights.

Defendants erroneously contend that Plaintiffs "have failed to allege an ongoing violation of federal law calling for prospective relief." Appellees Br. at 10.[3] In fact, the Second Amended Complaint contains numerous allegations that the continued withholding of money and property forfeited from Class Members in connection with their vacated, wrongful convictions is an ongoing violation of the Fourteenth Amendment's guarantee of due process, *see Mathews v. Eldridge*, 424 U.S. 319 (1976), and the Eighth Amendment's prohibition on excessive fines, *see Timbs v. Indiana*, 586 U.S. 146 (2019).

As Plaintiffs allege, the constitutional problem with the status quo is not that Defendants unlawfully obtained forfeited property in the first place but that, even now, they continue to withhold forfeited property,

---

[3] The language in Defendants' brief is ambiguous, perhaps intentionally so. It conflates the allegation of a continuing violation with the request for prospective relief, but those "two elements" of the *Ex parte Young* exception, Appellant's Br. at 15, are distinct concepts. If Defendants mean to argue that Plaintiffs fail to allege any "ongoing violation of federal law," their argument is incorrect, as explained here. On the other hand, if Defendants only mean that Plaintiffs do not "call[] for prospective relief," that contention is also incorrect, as explained below in Part II.

notwithstanding the SJC's mass dismissal of the underlying wrongful convictions and the U.S. Supreme Court's holding in *Nelson v. Colorado*, 581 U.S. 128 (2017), which established Defendants have "zero claim of right" to withhold money and property from Class Members who have had "the presumption of their innocence . . . . restored." *Id.* at 139.

In the introduction to their Second Amended Complaint, Plaintiffs allege Defendants "have unlawfully forfeited and retained money and other property from Plaintiffs and many thousands of similarly situated individuals whom they seek to represent ('Class Members')." R.A. 65, ¶ 3. As the pleading further states, "even after the SJC vacated those wrongful convictions, Defendants have failed to return, or facilitate the return of, all Forfeited Property to Class Members and, instead, have maintained policies and procedures preventing its return." R.A. 66, ¶ 8.[4]

Regarding the District Attorneys, Plaintiffs allege that each Defendant has personally participated in the "unlawful taking and *withholding* of money and property from Class Members" and currently

---

[4] At the hearing on Defendants' motions to dismiss, the District Court aptly described Plaintiffs' claims as follows: "*Nelson* stands for the proposition that once the criminal conviction is vacated, that [Defendants] have no basis for *holding onto* the [forfeited] property." R.A. 274 (emphasis added).

"maintains a policy and practice of not returning Forfeited Property unlawfully taken and withheld from Class Members." R.A. 74-78, ¶ 25 (Berkshire District Attorney); ¶ 26 (Bristol District Attorney); ¶ 27 (Cape and Islands District Attorney); ¶ 28 (Essex District Attorney); ¶ 29 (Hampden District Attorney); ¶ 30 (Middlesex District Attorney); ¶ 31 (Norfolk District Attorney); ¶ 32 (Northwestern District Attorney); ¶ 33 (Plymouth District Attorney); ¶ 34 (Suffolk District Attorney); ¶ 35 (Worcester District Attorney) (emphasis added). Plaintiffs plead similar claims concerning the ongoing unlawful conduct of the Court Administrator of the Massachusetts Trial Court and the Superintendent of the Massachusetts State Police. R.A. 78-79, ¶¶ 36-37.

Plaintiffs further allege, in no uncertain terms, that "Defendants have unlawfully withheld, continue to unlawfully withhold, and have taken no steps to return the money and property that was wrongfully taken from Class Members in connection with their vacated drug convictions." R.A. 96-97, ¶ 131. Specifically, they allege that Defendants have "failed to notify Class Members of their rights" and "failed to establish . . . an efficient, effective, and fair process to return all Forfeited Property to Class Members." R.A. 96, ¶¶ 128-29.

In setting forth Plaintiffs' class allegations, the Second Amended Complaint states: "Defendants have failed to comply with their legal obligations, and they continue to wrongfully withhold Forfeited Property to which Defendants currently have 'zero claim of right.'" R.A. 98, ¶ 136 (quoting *Nelson*, 581 U.S. at 139). Rather than facilitate the return of forfeited property that they continue to unlawfully withhold, Defendants have "opposed efforts by Class Members to recover money and property that was taken in connection with their vacated, wrongful convictions." R.A. 98, ¶ 137.

In seeking a declaratory judgment, the Second Amended Complaint alleges that Defendants "have unlawfully withheld, continue to unlawfully withhold, and unlawfully have taken no steps to return th[e] money and property" that was forfeited from Class. R.A. 101, ¶ 153 (Count I). Similarly, in asserting their Fourteenth Amendment claim, Plaintiffs again allege that Defendants "have unlawfully withheld, and continue to unlawfully withhold, Forfeited Property from Class Members." R.A. 102, ¶ 157 (Count II); *see also* R.A. 103, ¶ 162 (alleging Plaintiffs "will continue to suffer" from the ongoing violation of their due process rights). And in asserting their Eighth Amendment claim,

Plaintiffs allege that they will "continue to suffer" from the ongoing imposition of excessive fines, since "the SJC vacated and dismissed with prejudice Class Members' state drug convictions," "restored Class Members' presumption of innocence," and "render[ed] them legally innocent of the state drug charges that . . . prompted the forfeitures of their money and property." R.A. 105, ¶¶ 171-72.

These allegations are more than adequate, at the pleading stage, to satisfy the "straightforward inquiry" that the Eleventh Amendment requires. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring)). Indeed, "[a]n *allegation* of an ongoing violation of federal law . . . is ordinary sufficient," because *Ex parte Young* does not include an analysis of the merits of the claim." *Id.* (emphasis added); *see Deposit Ins. Agency v. Superintendent of Banks*, 482 F.3d 612, 621 (2d Cir. 2007) (holding, under *Ex parte Young*, an

allegation of an ongoing violation is sufficient and explaining "the inquiry concerning such allegations is limited to whether the alleged violation is a substantial, and not frivolous, one"). At this stage on appeal from the denial of a motion to dismiss, the question is not whether Plaintiffs can prove any continuing violation of federal law, but whether they have adequately alleged one, and they plainly have done so.

*Doe v. Shibinette*, 16 F.4th 894 (1st Cir. 2021), a § 1983 action concerning involuntary emergency admissions for mental health treatment, illustrates how the "straightforward inquiry" works in practice. The plaintiffs claimed that, in violation of the Fourteenth Amendment's guarantee of due process, the State of New Hampshire failed to provide timely probable-cause hearings for persons who were subjected to involuntary commitments. Among other state officials, they named the Commissioner of the New Hampshire Department of Health and Human Services as a defendant in her official capacity. At the pleading stage, as an affirmative defense in her answer, the Commissioner argued that the Eleventh Amendment barred the suit, because the plaintiffs alleged only violations of state law, not federal law.

In rejecting that contention, this Court reviewed the complaint and concluded:

> The class plaintiffs *allege* that the Commissioner has deprived them of their liberty without due process to which they are entitled under the federal Constitution. Thus, at least at first blush, the class plaintiffs seek to require the Commissioner to comply with federal, not state, law and so, in that respect, appear to bring claims that fall squarely within the *Ex parte Young* exception, notwithstanding the Commissioner's contrary contention.

*Id.* at 903 (emphasis added). In *Shibinette*, this Court affirmed the district court's denial of the defendant's motion to dismiss based on sovereign immunity. Here, applying the same analysis to the allegations in Plaintiffs' Second Amended Complaint should yield the same result.

To the extent Defendants contend that Plaintiffs fail to allege any continuing *violation* because they supposedly seek only retrospective, monetary *relief*, *see* Appellants' Br. at 10 (arguing "Plaintiffs have failed to allege an ongoing violation of law calling for prospective relief"), Defendants erroneously conflate the distinct concepts of rights and remedies, *see Chelentis v. Luckenbach Steamship Co.*, 247 U.S. 372, 379 (1918) ("The distinction between rights and remedies is fundamental. A right is a well-founded or acknowledged claim; a remedy is the means

employed to enforce a right or redress an injury.") (quoting BOUVIER'S LAW DICTIONARY); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) ("It is a general and indisputable rule, that were there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.") (citing BLACKSTONE'S COMMENTARIES); *see also* BLACK'S LAW DICTIONARY (revised 4th ed. 1968) (defining "remedy" as "[t]he means by which a right is enforced or the violation of a right is prevented, redressed, or compensated.").

As to the rights at issue in this case, the Fourteenth Amendment guarantees due process, *see Mathews*, 424 U.S. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment."), and the Eighth Amendment prohibits excessive fines, *see Timbs*, 586 U.S. at 149 ("[T]he protection against excessive fines guards against abuses of the government's punitive or criminal-law-enforcement authority."). Evidence that state actors, like Defendants here, have denied fair procedures for the return of forfeited property and imposed punitive forfeitures on innocent people, like Plaintiffs here, would establish

violations those federal constitutional rights. That would, however, leave open the related question of what remedies may be appropriate to address those violations—and, pursuant to the *Ex parte Young* doctrine, what remedies may be available in federal court.

Finally, although this Court reviews *de novo* the issue of sovereign immunity, it is worth nothing that, on appeal, Defendants repeatedly mischaracterize District Court's ruling, falsely asserting the District Court *found* no continuing violation of federal law. *See* Appellants' Br. at 15 (claiming court "conclude[d] that Plaintiffs' claims . . . involve no ongoing violation of federal law"); *id.* at 19 (claiming court "concluded that this case presents no ongoing or continuing violations of federal law"); *id.* (stating, "as the District Court itself concluded—there is no continuing violation of federal law with respect to forfeited property."). The District Court made no such finding, as the record clearly shows.

To the contrary, the District Court summarized Plaintiffs' claims as follows: "In light of the invalidation of their convictions, Plaintiffs assert that Defendants are *unlawfully continuing to withhold* Plaintiffs' forfeited property." R.A. 223 (emphasis added). It ruled only that it could not remedy the alleged continuing violations of Plaintiffs' federal rights

by directly ordering Defendants (or the Commonwealth) to return all forfeited money and property, because such relief would be tantamount to retrospective monetary compensation which is not available under the Eleventh Amendment. R.A. 228-30. As discussed below, however, the District Court noted several other forms of prospective injunctive relief that it could provide. R.A. 232-33. It would have made no sense for the District Court to have ruled that it could order notice, an accounting, and enhanced procedures, if there were no continuing violations to remedy.

If the District Court's order were not clear enough, its comments at the lengthy hearing on Defendants' motion to dismiss leave no doubt. In questioning Defendants' counsel, the District Court recognized that "tak[ing] people's property" based on unreliable drug evidence and, thus, without probable cause is "a due process question, not a state law question." R.A. 249; *see* R.A. 252 (rejecting "the notion that there isn't a due process problem," if there is no probable cause based on reliable evidence); R.A. 254 ("to the extent there is no probable cause, you can't just take the thing").[5]

---

[5] At the motion hearing, counsel for Defendants conceded this critical point. Referring to the mass dismissal of wrongful convictions, the District Court asked, "It certainly didn't seem like we're saying we're

The District Court went on to distinguish (i) the "categorial problem" that lab scandals rendered unreliable the drug evidence which supposedly established probable cause for forfeitures from Class Members from (ii) any "categorial relief" to which Class Members may be entitled. R.A. 259. Then, in announcing its preliminary view that Defendants could not get "out of the case" simply by invoking the Eleventh Amendment bar, given the ongoing due process concerns for Class Members, the District Court left open "the extent of remedies that the plaintiffs are seeking [that] are going to be available." R.A. 277-78.

---

going to throw out 10,000 cases because there were five cases that were bad. What we're saying is we're throwing out 10,000 cases because we have *no reliability as to any of them* because so many of them are bad, right?" and counsel for Defendants responded, "I'd say that's fair, Your Honor." R.A. 251-52 (emphasis added).

**II.** **Consistent with the *Ex parte Young* exception to the Eleventh Amendment, the District Court can award prospective declaratory and injunctive relief to remedy Defendants' alleged continuing violations of Plaintiffs' federal constitutional rights.**

   **A.** **The District Court can declare that the continued withholding of money and property forfeited from Class Members in connection with their vacated, wrongful convictions violates the Fourteenth Amendment's guarantee of due process and the Eighth Amendment's prohibition on excessive fines.**

Sovereign immunity for state governments, as protected by the Eleventh Amendment, "does not bar certain actions against state officers for injunctive or *declaratory* relief." *Alden v. Maine*, 527 U.S. 706, 757 (1999) (emphasis added). Rather, "the doctrine of *Ex parte Young* . . . allows a plaintiff to enforce a claim of federal right by obtaining injunctive or *declaratory* relief." *Greenless v. Almond*, 277 F.3d 601, 606-07 (1st Cir. 2002) (emphasis added); *see, e.g., Verizon Md., Inc. v. Pub. Servs. Comm'n of Maryland*, 535 U.S. 635, 645-46 (2002) (holding that, under *Ex parte Young*, declaratory relief was available as a potential form of equitable relief); *Edelman v. Jordan*, 415 U.S. 651, 668-69 & n.1 (1974) (affirming District Court order that included declaratory relief); *Concilio de Salud Integral de Loiza, Inc. v. Perez-Perdomo*, 551 F.3d 10, 18 (1st Cir. 2008) (holding the "prospective injunctive and declaratory relief"

that the plaintiffs sought was "the sort permissible under *Ex parte Young*"). In other words, a declaratory judgment that the conduct of state officials violates federal law is a common form of prospective equitable relief that the Eleventh Amendment undoubtedly permits.

Rather than dispute that well-established principle, Defendants rely on a narrow exception to the general rule, which suggests a declaratory judgment may be inappropriate if it would serve only to have a res judicata effect in related state-court proceedings. *See* Appellants' Br. at 26 (citing *Green v. Mansour*, 474 U.S. 64, 73-74 (1985), and *Mills v. Maine*, 118 F.3d 37, 55 (1st Cir. 1997)).

> In *Green v. Mansour*, the Supreme Court concluded that declaratory relief is impermissible where such relief would "have much the same effect as a full-fledged award of damages or restitution by the federal court," the very type of relief forbidden by the Eleventh Amendment. 474 U.S. at 73. Put another way, declaratory relief is not available if *its sole efficacy* would be as res judicata in a subsequent state court action for retroactive damages or restitution.

*Venetie I.R.A. Council v. Alaska*, 944 F.2d 548, 552 (9th Cir. 1990) (emphasis added) (holding "[t]he plaintiffs' request for declaratory relief is not barred by the Eleventh Amendment"); *cf. Manning v. S.C. Dep't of Highway & Pub. Transp.*, 914 F.2d 44, 48 (4th Cir. 1990) (affirming the

district court's denial of the plaintiff's request for "a declaration that his rights were violated under an outmoded statutory scheme," because "[t]he *only benefit* he could derive from a favorable ruling would be a judgment which he could argue as res judicata in his stayed state court proceedings") (emphasis added).

That limited exception has no application in this case. If the District Court were to declare the existing state procedures for seeking return of forfeited property violate due process, or "additional procedural due process protections within a Rule 60(b) hearing" are necessary, that declaratory judgment "would not change the fact that 'whether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, courts, and legislature, not with the federal court." R.A. 233 (quoting *Quern v. Jordan*, 440 U.S. 332, 348 (1979)).

"[T]he chain of causation" that Defendants "seek to establish," from the requested declaration to the potential return of forfeited property, "is by no means unbroken; it contains numerous missing links, which can be supplied, if at all, only by the State and members of the plaintiff class and not by a federal court." *Quern*, 440 U.S. at 347-48. Put simply, a declaratory judgment that the continued withholding of forfeited

property from Class Members, without any fair, efficient, and effective process for its return, would not be tantamount to an order that the Commonwealth actually return anything, much less pay any monetary compensation, to Class Members. As envisioned by the District Court, if such equitable relief issued, Class Members would still need to bring motions; Defendants would still need to act on those motions; and if opposed, state courts would still need to rule on them, deciding whether to order the return of any forfeited money and property.

**B. The District Court can also order Defendants to comply with federal law, including by providing a fair, efficient, and effective means for Class Members to seek the return of their forfeited property, notifying Class Members of their rights, and requiring Defendants to conduct an accounting of all forfeited property that continues to be unlawfully withheld from Class Members.**

As the District Court correctly ruled, even if the Eleventh Amendment bars an order to return all forfeited money and property, "portions of Plaintiffs' requested relief are classic examples of prospective injunctive relief" and, thus, available under "the *Ex parte Young* exception to sovereign immunity." R.A. 232 (recognizing that, in addition to the return of their forfeited property, "Plaintiffs also request administrative and procedural tools to support the return of their

forfeited property") (citing R.A. 106, ¶ 179(b)); R.A. 233 ("Plaintiffs'
claims include requests for relief other than an order from this court
directing payment of money from the state[.]").

### 1. The District Court can order Defendants to implement enhanced due process protections for Class Members who request the return of their forfeited money and property in state court.

In *Commonwealth v. Martinez*, 480 Mass. 777, 109 N.E.3d 459
(2018), the SJC held Dookhan and Farak Defendants are not
automatically entitled to the return of all their forfeited money and
property, but it nevertheless acknowledged "the reasons for invalidating
a conviction potentially may warrant relief from [a] civil judgment of
forfeiture." *Id.* at 791, 109 N.E.3d at 476. That issue, it explained, "must
be separately litigated in the civil forfeiture proceeding," pursuant to
Mass. R. Civ. P. 60(b), "through a motion for relief from judgment." *Id.* at
791-92, 109 N.E.3d at 476.

As the District Court correctly observed, "[t]he SJC did not address
whether or to what extent the Rule 60(b) procedure should be modified
to provide appropriate due process protections for individuals whose
convictions have been invalidated." R.A. 219. That critical question,
which *Martinez* left unresolved, presents a federal constitutional concern,

because "[t]o comport with due process, a State may not impose anything more than minimal procedures on the refund of exactions depending upon a conviction subsequently invalidated." *Nelson*, 581 U.S. at 139; *see also id.* at 137 (holding that, "to get their money back," exonerated individuals "should not be saddled with any burden of proof ").

If Defendants are found liable to Plaintiffs in this case for violating their federal constitutional rights, by unlawfully withholding money and property forfeited in connection with vacated, wrongful convictions, the District Court could "order additional procedural due process protections within a Rule 60(b) hearing" to ensure that the refund mechanism in state court comports with due process. R.A. 233. That is because, as the District Court observed at the motion hearing, "the idea that . . . where [Defendants] can't show probable cause anymore, that the burden is on [Plaintiffs] to have to come forward" with evidence to disprove any nexus to illegal drug activity "seems a violation of due process . . . if there's nothing more" than tainted drug certifications by disgraced state chemists that, as Defendants concede, are unreliable evidence. R.A. 254; *see* R.A. 251-52. Accordingly, it suggested that one *possible* form of prospective injunctive relief would be an order that Class Members be

provided with an opportunity "to bring a Rule 60 proceeding where [Defendants] would have to establish probable cause" based on untainted evidence. R.A. 256.

> ### a. In the Second Amended Complaint, Plaintiffs adequately request "an efficient, effective, and fair process" to seek the return of their forfeited property.

Putting aside the federal court's power to demand state officials' compliance with the Fourteenth Amendment's guarantee of due process, Defendants assert that "this request for relief"—that is, additional procedural protections for Class Members who want their forfeited money and property back—is "not found in the Complaint." Appellants' Br. at 9. That contention is both incorrect and irrelevant.

Under the heading "Request for Relief," Plaintiffs ask the District Court to "[a]ward equitable relief for Class Members," by ordering Defendants "[t]o implement an efficient, effective, and fair process to return all Forfeited Property to Class Members," whether through Rule 60(b) or by any other means, R.A. 106, ¶ 179(c), and "prohibit[ing] Defendants from seeking to re-forfeit the same property pursuant to the state forfeiture statute, absent enhanced due process protections." R.A. 106, ¶ 179(d). Plaintiffs also broadly ask the District Court to "[a]ward

other relief that this Court deems just, appropriate, and proper." R.A. 107, ¶ 181. To state the obvious, a "fair process" to seek the return of forfeited property is one that comports with due process.

Moreover, even if Plaintiffs had omitted some magic words from their request for relief, that would not be a reason to reverse the District Court. Rule 54(c) provides a "final judgment should grant the relief to which each party is entitled, *even if the party has not demanded that relief in the pleading*." Fed. R. Civ. P. 54(c) (emphasis added). Accordingly, "a federal court should not dismiss a meritorious constitutional claim because the complaint seeks one remedy rather than another plainly appropriate one." *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 65-66 (1978); *see also Jones v. Willie*, No. 15-5658, 2016 U.S. App. LEXIS 23617, at *6 (6th Cir. Jan. 28, 2016) (reversing dismissal of Eighth Amendment claim and holding "Jones's failure to request a form of relief available under § 1983, *e.g.*, monetary damages, is not fatal to his claims"). When, as is in this case, Plaintiffs have "alleged facts which, if proved, may indeed entitle [them] to relief," they are "entitled to proceed further with [their] complaint," and "[i]t is irrelevant that the relief requested may in fact be inappropriate." *Lyons v. Powell*, 838 F.2d 28, 31 (1st Cir. 1988).

The only questions at this early stage are (1) whether Plaintiffs have adequately alleged continuing violations of federal law and (2) if Plaintiffs prove those violations, whether the federal court could provide any prospective equitable relief to remedy them. The answer to both questions is plainly "yes."

### b. An order for enhanced procedures would not constitute impermissible relief "against the Commonwealth."

Defendants also object that any equitable relief involving enhanced procedures for the fair, efficient, and effective return of money and property forfeited from Class Members in connection with their vacated, wrongful convictions would "operate on the state courts themselves, making the Commonwealth rather than any individual defendant the real party interest." Appellants Br. at 22.

This Court rejected that same misguided argument in *Doe v. Shibinette*, 16 F.4th 894 (1st Cir. 2021), a case that Defendants cite (for a different proposition) in their brief. Appellants' Br. at 12-13. Although *Shibinette* concerned state-wide practices in New Hampshire in connection with involuntary commitments to mental hospitals, the District Court rejected the Commissioner's argument that the Eleventh

Amendment barred the suit against her in her official capacity. On interlocutory appeal, this Court affirmed, holding the Commissioner's contention that "the State of New Hampshire is the real, substantial party in interest" was not "persuasive." *Id.* at 904.

As the District Court explained at the motion hearing in this case, "the fact that [Plaintiffs are] asking for relief directed at the state doesn't get [Defendants] out of the federal court." R.A. 273; *see id.* (ruling "someone's asking for relief against the State doesn't mean there's Eleventh Amendment immunity"). That, after all, is the entire point of the *Ex parte Young* doctrine, one which the Supreme Court has long described as a "obvious fiction." *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 269-70 (1997) ("When suit is commenced against state officials, even if they are named and served as individuals, the State itself will have a continuing interest in the litigation whenever state policies or procedures are at stake.").

The "fiction" of the *Ex parte Young* doctrine "plays a foundational role in American constitutionalism," *Seminole Tribe v. Florida*, 517 U.S. 44, 174 (1997), and it is "necessary to vindicate the federal interest in assuring the supremacy of [federal] law"—and ensuring state officials

comply with it. *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see also Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (holding the *Ex parte Young* doctrine "permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury"); *Deposit Ins. Agency*, 482 F.3d at 618 (describing *Ex parte Young* as "a landmark of American constitutional jurisprudence that operates to end ongoing violations of federal law").

By way of example, *Rosie D. v. Swift*, 310 F.3d 230 (1st Cir. 2002), was not *really* a suit against then-Acting Governor Jane Swift and "a complement of Massachusetts officials," and, as this Court held, the Eleventh Amendment did not bar the District Court from ordering "the Commonwealth" to provide the plaintiffs, and the class members whom they represented, with the home-based mental health services to which they were entitled under Medicaid. *Id.* at 237. The plaintiffs "ask[ed] the district court to order the defendants to reform the Massachusetts Medicaid program to include the home-based mental health care that [federal regulations] allegedly require[d]," *id.* at 233, and this Court held their suit was a proper one for "prospective injunctive relief," *id.* at 234.

This Court affirmed the District Court's denial of the defendants' sovereign immunity motion, and it should do the same here.

In challenging the District Court's authority to order enhanced procedures, Defendants cite a so-called "*Pennhurst* rule," but their argument misreads both the holding of *Pennhurst* and the summary of *Pennhurst* in *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 256 (2011). Appellants' Br. at 22-24. *Pennhurst* stands for the proposition—inapplicable, here—that the Eleventh Amendment bars suits in federal court against state officials for violations of *state* law. 563 U.S. at 106. In this case, Plaintiffs allege that Defendants are violating *federal* law. Meanwhile, *Stewart* addressed the question—also inapplicable here—"whether *Ex parte Young* . . . allows a federal court to hear a lawsuit for prospective relief against state officials brought by another agency of the same State." 563 U.S. at 250. It goes without saying that Plaintiffs are not an agency of the Commonwealth of Massachusetts.

Defendants erroneously contend that *Pennhurst*, as described by *Stewart*, bars prospective injunctive relief that would require state officials to take any action, as opposed to refraining from action. Neither *Pennhurst* nor *Stewart* endorses any such rule. Defendants cherry-pick a

line from *Pennhurst* that the Eleventh Amendment bars a suit against state officials that is in fact a suit against a State." 465 U.S. at 101; *see* Appellant's Br. at 24 (citing, three times, to page 101 and footnote 5 of *Pennhurst*). Yet on the very next page of the decision (which Defendants ignore), the Supreme Court discussed at length the *Ex parte Young* doctrine (or "fiction"), which serves as an "important exception" to sovereign immunity and authorizes such suits. *Id.* at 102. The fundamental point of *Pennhurst* is that the need to vindicate federal supremacy justifies the "fiction" that when state officials violate federal law, they are not "the state" and, therefore, do not enjoy the state's sovereign immunity. If the same officials violate only state law, no similar federal concerns are present, so there is no reason to extend the *Ex parte Young* doctrine that far.

The case law is replete with orders that, pursuant to *Ex parte Young*, have required state officials to act in compliance with federal law. As discussed above, in *Rosie D.*, this Court affirmed the district court's denial of the defendants' motion to dismiss the plaintiffs' suit which sought to require state officials to comply with federal law by providing residential mental health treatment to Medicaid beneficiaries. *See* 310

F.3d at 237. Similarly, in *Stewart*, the Supreme Court affirmed the denial of a motion to dismiss a suit where the plaintiff, a state oversight agency, sought an order requiring state officials to produce records regarding deaths at state mental hospitals which the officials had improperly withheld. 563 U.S. at 253. To comply with such an order, the state officials would obviously have to do something, a prospect that did not offend the Eleventh Amendment, according to the Supreme Court.

> **2.** **The District Court can order Defendants to notify Class Members of their rights to seek the return of their forfeited money and property.**

The District Court correctly ruled that, if Defendants are found liable, they could be ordered to provide "notification" to Class Members of "their rights" to seek return of all forfeited property, under Rule 60(b) and possibly with "more robust" procedures. R.A. 232. As the District Court rightly noted, "the crux" of *Quern v. Jordan*, 440 U.S. 332 (1979), was the Supreme Court's holding that "notice relief" can constitute prospective injunctive relief, which is available under the Eleventh Amendment, when it "simply apprises plaintiff class members of the existence of whatever administrative procedures may already be available under state law by which they may receive a determination of

eligibility for past benefits." *Id.* at 347-48; *see also Doucette v. Ives*, 947 F.2d 21, 31 (1st Cir. 1991) (affirming as "appropriate forms of relief," both "the district court's order declaring the challenged [Aid to Families with Dependent Children ("AFDC")] regulation invalid" and also "the notice relief granted ancillary to that order").

Defendants endeavor to distinguish *Quern* and rely instead on *Green v. Mansour*, 474 U.S. 64 (1985), in which the Supreme Court found that notice relief went too far. That argument fails, however, because this case more closely resembles *Quern* than *Green*. In short, because the District Court can declare that the continued withholding of forfeited money and property from Class Members violates federal law and order Defendants to implement a fair, efficient, and effective fair process for Class Members to seek the return of their money and property, it can also order that they receive notice of their rights.

*Quern* followed *Edelman v. Jordan*, 415 U.S. 651 (1974), a class action concerning benefits under the federal-state programs of Aid to the Aged, Blind, or Disabled ("AABD"). The plaintiffs alleged that the defendants, all Illinois state officials who had responsibility for

administering the AABD program, violated federal regulations by taking too long to process applications.

Finding the defendants had violated, and were continuing to violate, federal regulations for the AABD program, the district court declared that the state regulations were invalid to the extent they conflicted with federal law and ordered that the defendants both pay all past AABD benefits that were due and process all future AABD applications in compliance with federal regulations. After the Seventh Circuit affirmed, the Supreme Court reversed only "that portion of the Court of Appeals decision which affirmed the District Court's order that retroactive benefits be paid by the Illinois state officials." *Id.* at 659. The Supreme Court left in place the rest of the equitable relief, noting that the state administrators "concede[d] that *Ex parte Young* is no bar to that part of the District Court's judgment that prospectively enjoined [the officials] from failing to process applications within the time limits established by the federal regulations." *Id.* at 664.

Five years later, the Supreme Court revisited the same litigation in *Quern*. On remand after *Edelman*, the District Court had ordered the defendants to provide all class members a notice informing the recipient:

"[You] were denied public assistance to which you were entitled in the amount of $_____." 440 U.S. at 334-35. It further ordered the notice to include an appeal form that could be signed and returned to request a hearing on the denial of past AABD benefits. *Id.* at 335. The Seventh Circuit, hearing the case again, revised the required notice, holding "the District Court could order the state officials to send a 'mere explanatory notice to applicants advising them that there is a state procedure available if they desire to have the state determine whether or not they may be eligible for past benefits'" and that "'[a] simple returnable notice of appeal form could also be provided.'" *Id.* at 335-36.

The Supreme Court affirmed that "modified notice procedure," holding that it "falls on the *Ex parte Young* side of the Eleventh Amendment line rather than on the *Edelman* side." *Id.* at 346-47. The approved notice "apprised class members of the existence of whatever administrative procedures may already be available under state law by which they may receive a determination of eligibility for past benefits." *Id.* at 347-38; *see also id.* at 349 (describing notice as "simply inform[ing] class members that their federal suit is at an end, that the federal court can provide them with no further relief, and that there are existing state

administrative procedures which they may wish to pursue."). In this case, Plaintiffs seek a similar notice about the rights of Class Members to seek the return of forfeited money and property, and *Quern* makes clear that the District Court can order Defendants to issue such notice.

In reaching that conclusion, the Supreme Court expressly rejected the argument, which Defendants advance here, that awarding notice relief "will lead inexorably to the payment of state funds for retroactive benefits." *Id.* at 347.

> The mere sending of that notice does not trigger the state administrative machinery. Whether a recipient of notice decides to take advantage of those available state procedures is left completely to the discretion of that particular class member; the federal court plays no role in that decision. And whether or not the class member will receive retroactive benefits rests entirely with the State, its agencies, courts, and legislature, not with the federal court.

*Id.* at 348. The same would be true in this case, if Defendants are found liable for their continuing violations of federal law and the District Court orders the requested notice for Class Members.

Meanwhile, *Green* involved challenges to the calculations of AFDC benefits. The plaintiffs claimed that the defendants, all state officials who administered the AFDC program, violated federal law by adding

stepparent income and not deducting childcare costs when determining income eligibility. While the case was pending, Congress amended the relevant provisions to expressly exclude stepparent income and consider childcare costs, and all parties agreed the defendants "brought state policy into compliance with that amendment." *Id.* at 65. Because the plaintiffs made "no claim" that the defendants had "not complied with the federal law since that time," their requests for "declaratory and notice relief related solely to past violations of federal law." *Id.* at 66-67; *see also Doucette*, 947 F.2d at 31 (interpreting *Green* to hold that notice relief is unavailable only when "there are no ongoing violations of federal law with respect to class members").

Although *Green* confirmed "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law," the plaintiffs in that case "concede[d] that any claim they might have had for the specific type of injunctive relief approved in *Ex parte Young* was rendered moot by the amendments to the AFDC program." 474 U.S. at 68. Here, in contrast, Plaintiffs allege that they face continuing violations of their federal constitutional rights, because Defendants continue to unlawfully

withhold their forfeited property—to which Defendants have no rights whatsoever. Unlike in *Green*, Plaintiffs have made no concessions about the mootness of any declaratory or injunctive relief that may be appropriate to remedy those violations.

Defendants also rely on *Mills v. Maine*, 118 F.3d 37 (1st Cir. 1997), but that case follows a similar pattern to *Green*. In *Mills*, the plaintiffs, all state employees, complained that Maine failed to pay them overtime in violation of the Fair Labor Standards Act ("FLSA"). *Id.* at 41. As in *Green*, while *Mills* was pending, the circumstances changed; specifically, Maine "brought itself into compliance with the FLSA's wage and hour requirements," leaving only a dispute about "how much overtime back pay" may have been owed. *Id.* Given that development, which ended the alleged violation of the FLSA, "both sides to th[e] dispute agree[d] that there [wa]s no continuing violation of federal law." *Id.* at 54. In *Mills*, no prospective injunctive relief was available, because there were no continuing violations to enjoin. But that is not the case here.

**3. The District Court can order Defendants to conduct an accounting of all forfeited property that continues to be unlawfully withheld in violation of federal law.**

Like notice, an accounting is a permissible form of prospective equitable relief. *See Taylor v. Westly*, 402 F.3d 924, 935-36 (9th Cir. 2005) (reversing dismissal of the plaintiff's action because "[h]er claim for an accounting is genuinely prospective" and "appropriate under the Eleventh Amendment"). Here, to remedy the alleged continuing violations of federal law, the District Court could order an accounting of all money and property forfeited from Class Members as additional relief that would be "ancillary" to available declaratory or injunctive relief.

Defendants do not disagree; instead, they argue only that an accounting would be "extremely burdensome." Appellants Br. at 20. At the pleading stage, and as a purported reason to reverse the District Court's denial of Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), that conclusory assertion is patently premature. Further, it lacks factual support and, if accepted, would reward Defendants for the government misconduct that caused the drug lab scandals.

In a single sentence, Defendants assert that "the administrative burden and expense" of an accounting would be "substantial," because it

would supposedly require "manual review of dockets in thousands of forfeiture proceedings at courthouses across the Commonwealth." *Id.* at 21. That premature claim, presented in a "perfunctory manner" without "some effort at developed argumentation," should be "deemed waived." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1980).

Defendants neither define "substantial," in terms of dollars, hours, or otherwise, nor estimate how the purported burden would compare to the staggering losses of forfeited money and property suffered by thousands of Class Members. Nor do Defendants support their assertion with any evidence. None appears in the record before this Court, and none was presented below to the District Court.

In *Kapps v. Wing*, 404 F.3d 105 (2d Cir. 2005), the defendants, state officials involve in the administration of New York's Home Energy Assistance Program ("HEAP"), raised similarly conclusory objections to an order than they provide notice relief to class members, and the Second Circuit flatly rejected them. The plaintiffs alleged that the state officials denied heating benefits in violation of the Fourteenth Amendment's guarantee of due process. The district court agreed in part, and among other declaratory and injunctive relief, it ordered the defendants to

provide "*Quern* notice relief," informing class members about the court's ruling and advising them that "they might be able to appeal prior years' determinations through the state fair hearing process." *Id.* at 111-12. On appeal from an adverse ruling on summary judgment, the defendants challenged the notice relief, insisting the cost would be "exorbitant," "impracticable," and even "prohibitive." *Id.* at 124.

Brushing aside those "burden" objections, the Second Circuit affirmed. It recognized that, as in all procedural due process cases, "the cost to the defendants of providing improved notice is a relevant consideration," *id.* (citing *Mathews*, 424 U.S. at 335, 348), and may be considered in "plac[ing] limits on due process notice relief." *Id.* But the court also noted that it had only imposed such cost-based limits, when "there has been a well-supported factual basis in the record for concluding that costs of more detailed notice would in fact by unduly burdensome." *Id.* at 125. The defendants in *Kapps* failed to support their objection with any evidence. Without "evidence in the record" on appeal, the Second Circuit could not conclude that "the burden of affording improved notice would be unreasonable." *Id.*

The discovery context provides another helpful parallel. A finding of good cause for a protective order under Fed. R. Civ. P. 26, "must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7 (1st Cir. 1986); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (holding conclusory statements that production requests are "overly broad, burdensome, and oppressive" are "insufficient grounds for a protective order"). With regard to "burden" objections in particular, "[a] party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time and expense required." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018).

Finally, the alarming notion that Defendants cannot, without "substantial" investments of time and money, account for all the money and property that was taken and is still being withheld from Class Members, the innocent victims of outrageous government misconduct, reflects the chronic abuse of forfeiture practices, especially in drug cases, which have been criticized as "legalized theft." R.A. 81-89, ¶¶ 44-89; R.A. 94-96, ¶¶ 118-27. While serving as a Boston City Councilor, Attorney

General Campbell, now the lead Defendant in this case, agreed that "Massachusetts civil forfeiture laws do not provide appropriate due process." R.A. 96, ¶ 125; *see also Libretti v. United States*, 516 U.S. 29, 43 (1995) (holding "broad forfeiture provisions carry the potential for Government abuse and can be devastating when used unjustly").

In exercising its superintendence powers to remedy the widespread consequences of the lab scandals, the SJC has repeatedly affirmed that, "in the wake of government misconduct that has cast a shadow over the entire criminal justice system, it is most appropriate that the benefit of our remedy inure to defendants." *Bridgeman v. Dist. Atty. for the Suffolk Dist.*, 471 Mass. 465, 475-86, 30 N.E.3d 806, 816 (2015) (quoting *Commonwealth v. Scott*, 467 Mass. 352, 352, 5 N.E.3d 530, 545 (2014)); *see Comm. for Pub. Counsel Servs. v. Atty. Gen.*, 480 Mass. 700, 723, 108 N.E.3d 966, 985 (2018) ("The burden of ascertaining whether Farak's misconduct at the Amherst drug lab has created a problem of systemic proportions is not one that should be shouldered by defendants in drug cases.") (quoting *Commonwealth v. Cotto*, 471 Mass. 97, 112, 27 N.E.3d 1213, 1225 (2015)); *Scott*, 467 Mass. at 354 n.11, 5 N.E.3d at 540-41 n.11 ("It certainly is true that we cannot expect defendants to bear the burden

of a systemic lapse . . .") (adopting the framework from *Ferrara v. United States*, 456 F.3d 278 (1st Cir. 2006), for motions to withdraw guilty pleas in cases with tainted drug certificates).

Plaintiffs have alleged that the continued withholding of their forfeited money and property violates their federal constitutional rights. Defendants contend, in effect, that the federal courts can do nothing to remedy those violations, because Defendants are not even sure what they have taken from Class Members, and it would be too much of a hassle to figure that out. That "excuse" does not entitle Defendants to any Eleventh Amendment immunity for their unlawful conduct. If accepted, it would only add a serious insult to the constitutional injuries that Class Members are suffering—and absent equitable relief from the District Court, will continue to suffer.

## CONCLUSION

For the foregoing reasons, Plaintiffs Jennifer Cotto, Jamie Kimball, David Cummings, Todd Moton, and Travis Moran respectfully request this Court affirm the decision of the District Court denying in part the motion to dismiss on the grounds of sovereign immunity, by Defendants Andrea Joy Campbell, Timothy Shugrue, Thomas M. Quinn, III, Robert

J. Galibois, II, Paul Tucker, Anthony Gulluni, Marian Ryan, Michael W.

Morrissey, David E. Sullivan, Timothy J. Cruz, Kevin R. Hayden, Joseph

D. Early, Jr., Thomas G. Ambrosino, and John Mawn, Jr.

Respectfully submitted,

**JENNIFER COTTO,**
**JAMIE KIMBALL,**
**DAVID CUMMINGS,**
**TODD MOTON, and**
**TRAVIS MORAN**

By their attorneys,

*/s/ Daniel N. Marx*
Daniel N. Marx (#1150876)
William W. Fick (#82686)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*dmarx@fickmarx.com*
*wfick@fickmarx.com*

Luke Ryan (#1158006)
STREHORN, RYAN & HOOSE
100 Main Street, 3d Floor
Northampton, MA 01060
(413) 586-4800
*lryan@strhlaw.com*

September 6, 2024

## CERTIFICATE OF COMPLIANCE

I, Daniel N. Marx, Esq., counsel for Plaintiffs-Appellees Jennifer Cotto, Jamie Kimball, David Cummings, Todd Moton, and Travis Moran certify that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by Fed. R. App. 32(f), it contains 10,273 words and, also, with the type-face and type-style requirements of Fed. R. App. P. 32(a)(5)-(6), because it has been prepared in a proportionally spaced type-face using 14-point Century Schoolbook in Microsoft Word 2016.

*/s/ Daniel N. Marx*
Daniel N. Marx

**CERTIFICATE OF SERVICE**

I, Daniel N. Marx, counsel for Plaintiffs-Appellees Jennifer Cotto, Jamie Kimball, David Cummings, Todd Moton, and Travis Moran certify that, on September 6, 2024, I caused this Brief to be served electronically through the ECF system on the registered participants, including AAGs Anne Sterman, Katherine B. Dirks, and Christine Fimognari, as identified on the Notice of Electronic Filing.

*/s/ Daniel N. Marx*
Daniel N. Marx